Alma STREICHER, et al., Plaintiffs,

v.

William G. PRESCOTT, M.D., et al., Defendants.

James Angus McDONALD, et al., Plaintiffs,

v.

William G. PRESCOTT, M.D., et al., Defendants.

Civ. A. Nos. 83–3295, 84–1538.

United States District Court, District of Columbia.

Nov. 7, 1984.

Harry J. Fulton, Public Defender Service, Mental Health Div., Washington, D.C., for plaintiffs.

Ina Strichartz, Asst. U.S. Atty., Washington, D.C., for defendant Prescott.

Johnny M. Howard, Washington, D.C., for defendant Barry.

## MEMORANDUM OPINION IN SUPPORT OF CLASS ACTION CERTIFICATION

BARRINGTON D. PARKER, District Judge.

### Introduction

The indigent plaintiffs in this consolidated action, James Angus McDonald, Oscar Holt, Alma Streicher, Joshua LeRoy Robinson, and Harvell Johnson, are civilly committed to Saint Elizabeths Hospital ("Hospital" or "St. Elizabeths").[1] They request certification of this habeas corpus proceeding as a class action pursuant to Rules 23(a), (b)(1), and (b)(2) of the Federal Rules of Civil Procedure. The plaintiffs bring this action on their own behalf and on the

1. On June 1, 1984, the Court consolidated two related actions, *Streicher v. Dobbs*, No. 83–3295 (petition for removal filed Nov. 4, 1983) and *McDonald v. Prescott*, No. 84–1538 (filed May 16, 1984). Defendant Prescott is substituted for defendant Dobbs in the earlier-filed action, pursuant to Fed.R.Civ.P. 25(d). Since nearly identical motions for class certification have been filed in both actions, the Court considers that the two motions shall be treated as a single motion for purposes of class certification.

behalf of all persons who are presently civilly committed to the hospital, or will be committed to the hospital, whose commitments have not been judicially reviewed. Some of the individuals within this group were initially committed to St. Elizabeths under legal standards which are no longer in force. All of these individuals were committed pursuant to 21 D.C.Code § 301 *et seq.*, or its successor statute, 21 D.C.Code § 501 *et seq.* ("Ervin Act"). The Ervin Act replaced section 301 of Title 21 in 1964.

These civil commitments are challenged on the ground that they violate the plaintiffs' rights to due process and equal protection of the law. The plaintiffs seek release from custody, or in the alternative, demand new civil commitment proceedings as a prerequisite to future detention. The defendants are Dr. William G. Prescott, the present Superintendent of the Hospital, and Mayor Marion Barry. Mayor Barry is sued in his alleged capacity as the ultimate custodian of the plaintiffs.

## BACKGROUND

Prior to embarking on a discussion of the criteria for maintaining a class action, a more detailed analysis of the two-part structure of the proposed class is appropriate. First, the plaintiffs request certification of a class of civil committees who have been committed for longer than six months without the benefit of judicial review. The defendants have estimated that the class includes approximately 965 individuals. Affidavit of Mary Barlow (Acting Chief, Information Systems Branch, St. Elizabeths), attached as Ex. F to Defendants' Return and Answer to Show Cause, filed Dec. 5, 1983 (No. 83–3295). In support of this request, the plaintiffs assert that commitments which are indeterminate or in excess of six months are invalid unless they are judicially reviewed. Moreover, they also argue that this review must be automatic, not patient-initiated, in order to be effective.

The source of the requested periodic six-month review is apparently two-fold. The validity of each civil patient's initial commitment must be reviewed at least once every six months by the Hospital staff.[2] 21 D.C.Code § 548. Moreover, an insanity acquittee who is committed to St. Elizabeths may request judicial review of his commitment at least once every six months. 24 D.C.Code § 301(k)(1), (5).

Second, the plaintiffs also seek certification of a subclass of individuals within the larger class of individuals. These individuals were initially committed to the Hospital under commitment standards which are no longer in force and their commitments have not been judicially reviewed. The subclass includes individuals who were committed under 21 D.C.Code § 301, prior to the enactment of the Ervin Act in December of 1964, as well as those who were committed after the passage of the Ervin Act, but prior to the decision in *In Re Ballay*, 482 F.2d 648 (D.C.Cir.1973). The date of the *Ballay* decision is relevant because *Ballay* held that mental illness must be proved beyond a reasonable doubt in voluntary civil commitment proceedings. *Id.* at 669. Prior to *Ballay*, courts had utilized a preponderance of the evidence standard. The plaintiffs allege that commitments obtained prior to *Ballay* or prior to the Ervin Act are invalid because they were achieved under standards which have since become more stringent.[3]

The plaintiffs apparently propose this somewhat complex class structure because the legal challenges in the two situations—

---

**2.** In *Fasulo v. Arafeh,* 173 Conn. 473, 378 A.2d 553 (Conn.1977), the court held that periodic judicial renewal of civil commitments is constitutionally required. *Contra In Re Mendoza, Mental Health No.* 1220–79 (D.C.Sup.Ct. Jan. 13, 1984) (holding that automatic judicial review is not required). The Connecticut Supreme Court did not venture an opinion as to how often these reviews must occur. Here, the Court expresses no opinion as to the appropriate intervals for automatic review, or indeed, whether

*any* periodic judicial review is constitutionally required.

**3.** It is at least arguable that two distinct subclasses might be certified: a subclass of individuals committed prior to the *Ballay* decision and a presumably smaller subclass of individuals committed prior to the enactment of the Ervin Act. The latter group consists of individuals committed to the hospital for more than 20 years who have not had their commitments ju-

indeterminate commitments without the benefit of judicial review and invalid initial commitments—are not identical. The issues with respect to the propriety of class certification, however, are the same with respect to both the class and the subclass. With this background in mind, the Court next addresses the appropriateness of class certification. The discussion concerning the class applies equally to the discussion concerning the subclass.

## CLASS CERTIFICATION

It should be noted at the outset that although the precise requirements of Fed. R.Civ.P. 23 do not apply to habeas corpus proceedings, analogous procedures have been utilized in habeas actions under certain circumstances. *See Sero v. Preiser,* 506 F.2d 1115, 1125–27 (2d Cir.1974) (class action proceeding on behalf of young adult misdemeanants challenging legality of their confinement) *cert. denied,* 421 U.S. 921, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975). The circumstances which are relevant to class certification in a habeas proceeding include the degree to which the plaintiffs assert unitary allegations and their ability to obtain relief in individual actions. *Id.* at 1126–27. These criteria overlap with the criteria for class certification under Rule 23 of the Federal Rules of Civil Procedure.

Under Rule 23, a case may proceed as a class action if the four prerequisites of Fed.R.Civ.P. 23(a) are met and one of the three elements of Fed.R.Civ.P. 23(b) is satisfied. The four elements of Rule 23(a) require that: (1) the class is so numerous that joinder is impractical; (2) there are questions of law or fact which are common to the class the plaintiff seeks to represent; (3) the claims or defenses of the representative parties are typical of the claims of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

### Rule 23(a)(1) and (a)(2)

The defendants do not challenge the plaintiffs' showing with respect to numer-osity and commonality, and the Court is satisfied that the plaintiffs have satisfied these two elements of Rule 23(a). Joinder of approximately 965 separate claims would clearly be impractical, especially where the potential class members are mental patients who may be unaware of their legal rights. In addition, the constitutional issues are identical for all individuals in the proposed class definition, and the factual issues which are relevant to these legal issues are also similar. The plaintiffs have undertaken a general investigation into whether the Ervin Act affords constitutionally sufficient protections to individuals who seek judicial review of their civil commitments. Any facts which have a bearing on the plaintiffs' claims that existing procedures for judicial review of civil commitments are generally inadequate will apply across the board to all members of the class.

### Rule 23(a)(3)

These same considerations also satisfy the requirement that the plaintiffs' claims must be typical of those of the class at large. Put another way, the claims must "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members and [be] based on the same legal theory." *EEOC v. Printing Industry of Metropolitan Washington, D.C., Inc.,* 92 F.R.D. 51, 54 (D.D.C. 1981). Here, the plaintiffs' claims are typical because they challenge a general practice—civil commitments which have not been renewed within the past six months—which give rise to the claims of all class members.

It is not relevant, as the defendants suggest, that the current mental or emotional conditions of the members of the class may differ. These factors may only affect whether these individuals are ultimately released from confinement, not whether they are entitled to judicial review of these confinements. In the same vein, neither the length of each class member's confinement, nor distinctions between inpatient and out-

---

dicially reviewed. At this stage, the Court approves the subclass requested by the plaintiffs, and retains jurisdiction to create additional sub-classes at a latter point. *See Blackie v. Barrack,* 524 F.2d 891, 909 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

patient status, undercuts the viability of the conclusion that class certification is warranted. Thus, the Court finds that the requirements of Fed.R.Civ.P. 23(a)(3) have been satisfied.

**Rule 23(a)(4)**

The two-part standard for fair and adequate representation of a class under Fed. R.Civ.P. 23(a)(4) requires that:

> counsel for the class must be qualified, experienced and generally able to conduct the proposed litigation and [ ] the interests of the representative party [must] be coextensive with the interests of the entire class.

*E.E.O.C. v. Printing Industry*, 92 F.R.D. at 54. Here, the interests of all members of the class, including the plaintiffs, are coextensive, and the legal abilities of plaintiffs' counsel, an attorney with the Public Defenders' Service ("PDS"), is unquestioned. This finding is not undercut by the statutory limitation on the ability of the PDS to represent nonindigent members of the class. *See* 1 D.C.Code § 2702. Although the class representatives are indigent persons and some class members are undoubtedly nonindigent, the Court perceives no conflict between the interests of these two groups. If a class representative later loses his indigent status, the Court may take appropriate remedial action at that time.

**Rule 23(b)(2)**

In addition to satisfying the criteria of Rule 23(a), the plaintiffs have also established that the defendants have

> acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. 23(b)(2). The action challenged is the continued commitment of the class members after six months have elapsed, without the benefit of judicial review. The only material factual issues involve whether an individual is a member of the class in the first instance; in other words, whether the patient's status has been judicially reviewed during the past six months of his commitment.

Moreover, declaratory and injunctive relief with respect to the adequacy of the Ervin Act procedures would be appropriate, if at all, with respect to the class as a whole. The possibility that any relief afforded to the individual plaintiffs by the defendants might also be extended to all patients at St. Elizabeths does not preclude certification of a class. The precise purpose of Rule 23(b)(2) is to provide a vehicle for class-wide declaratory and injunctive relief *without* the necessity of individual adjudications. Here, certification of a class is especially appropriate because it is at best uncertain whether mentally ill patients could readily take advantage of any favorable ruling extended to the named plaintiffs. Accordingly, certification under Fed. R.Civ.P. 23(b)(2), is appropriate, and it is unnecessary to consider the alternative provisions for certification under Fed.R.Civ.P. 23(b)(1)(B).

An appropriate order accompanies this Memorandum Opinion. The proposed order submitted by the plaintiffs has been clarified to resolve certain problems with ambiguity.