**CAROLINE C., By and Through her legal guardian, Theda CARTER, et al., Plaintiffs,**

v.

**Dale B. JOHNSON, in his official capacity as the Director of Nebraska Department of Public Institutions, et al., Defendants.**

**No. 4:CV95–22 RGK.**

United States District Court, D. Nebraska.

Sept. 26, 1996.

Shirley A. Mora James, Nebraska Advocacy Services, Inc., Lincoln, NE, Bruce G. Mason, Omaha, NE, for plaintiffs.

Martin W. Swanson, Attorney General's Office, Lincoln, NE, Alan E. Pedersen, McGill, Gotsdiner Law Firm, Omaha, NE, for defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the Court on the Magistrate Judge's Report and Recommendation (filing 60). No objections to such report and recommendation have been filed as allowed by 28 U.S.C. § 636(b)(1)(C) and NELR 72.4.

I have conducted, pursuant to 28 U.S.C. § 636(b)(1) and NELR 72.4, a de novo review of the report and recommendation. Inasmuch as Judge Piester has fully, carefully and correctly found the facts and applied the law, I need only state that the Report and

Recommendation of the Magistrate Judge should be adopted and plaintiffs' motion for class certification (filing 36) should be granted in part and denied in part.

IT IS ORDERED.

1. the Magistrate Judge's Report and Recommendation (filing 60) is adopted;

2. Plaintiffs' motion for class certification is denied with respect to those women patients who are no longer patients at the Hastings Regional Center and were not sexually assaulted or raped as their claims are moot;

3. Plaintiff's motion for class certification is denied with respect to the claim that defendants have adopted a practice of restricting the privileges of those women patients who report that they have been assaulted or raped; and

4. Plaintiff's motion for class certification is granted with respect to the following class as to all other claims raised in the complaint:

> All women who have been sexually assaulted or raped by male patients at the Hastings Regional Center, and all women who are or in the future will be patients at the Hastings Regional Center.

## REPORT AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

Before me for consideration is plaintiffs' motion for class certification.[1] (Filing 36) According to the allegations of the complaint, several male patients at the Hastings Regional Center (HRC), a state-supported mental health institution operated by the Nebraska Department of Public Institutions, have perpetrated a series of sexual assaults and rapes against the named plaintiffs and other female patients at HRC. The plaintiffs contend that the defendants have failed to adequately protect them from the assaults and

failed to take adequate remedial measures in response to the assaults, in violation of state and federal law and the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution.[2]

Plaintiffs seek to certify the following class: "all women who are currently patients at the Hastings Regional Center (HRC), and all those women who were in the custody of the Defendants at the HRC, during all material times, or in the future." (Filing 1 at 8; Plaintiff's Memorandum Brief In Support of Motion For Class Certification at Part I) (hereinafter "Plaintiff's Brief.") The proposed class includes the following subclasses: (1) all women patients who have been sexually assaulted by male patients at HRC (approximately 50 women); and (2) all women who are currently patients at HRC or were patients at HRC at the time of the assaults (approximately 1,037 women). (*See generally* Plaintiff's brief.) For the reasons set forth more fully below, I shall recommend that plaintiffs' motion for certification of the proposed class be granted in part and be denied in part.

## BACKGROUND

According to the allegations of the complaint, the named plaintiffs, Caroline C., Donna W., Debra W., and Billie V., are patients in Wards 35 and 36 of the Hastings Regional Center. Each has a history of mental illness, and each has been attacked and raped by one of three male patients at HRC, who are referred to in the complaint as "R," "J," and "F." Plaintiffs contend that approximately fifty other women patients at HRC have been raped or sexually assaulted by male patients over the past four years, but the defendants, who are officials and psychiatrists at HRC, have failed to take adequate measures to prevent such assaults and have failed to take adequate measures to treat the

---

**1.** This matter was referred to me by United States District Judge Richard G. Kopf "for an order or report and recommendation as may be appropriate." (Filing 44.) The federal statute that establishes the authority of federal magistrate judges, 28 U.S.C. § 636, treats motions "to dismiss or permit maintenance of a class action" as "dispositive" motions requiring the consideration of the, trial judge. 28 U.S.C.

§ 636(b)(1)(A). Consequently, I shall recommend, rather than order, certification in this case, as set forth below. *See* 28 U.S.C. § 636(b)(1)(B).

**2.** Plaintiffs seek only declaratory and injunctive relief. (Filing 1 at 2 and 32–38.)

emotional and mental damage to the victims of the assaults. The allegations with regard to each named plaintiff are set forth below.

### Plaintiff Donna W.

On January 27, 1993 male patients "J," "R," and "F" sexually assaulted Plaintiff Donna W. at the Hastings Regional Center. (Filing 1 at 11.) Later, on June 10, 1993, "J" and "R" kicked, raped, and beat Donna W. (Filing 1 at 11.) Two other patients witnessed the June 10th incident and reported it to the defendants. (Filing 1 at 11.) Donna W. required medical treatment at Mary Lanning Hospital in Hastings, Nebraska for bruises to her chest, right shoulder, and left cheek. (Filing 1 at 11.) Plaintiffs contend that the defendant officials had actual knowledge that the same male patients had previously assaulted several other women patients, but the defendants failed to take adequate measures to prevent future assaults. In addition, they allege that the failure to do so constituted a custom, policy, or practice of the defendants.[3] (Filing 1 at 12.)

### Plaintiff Debra W.

According to the complaint, Plaintiff Debra W. was sexually assaulted by male patient "R" on July 7, 1991 and again in September of 1992. (Filing 1 at 12.)[4] On December 6, 1992 patient "F" attempted to sexually assault Debra W., and the next day she reported the incident to HRC staff. (Filing 1 at 13.) Approximately one month later, on January 27, 1993, "F" perpetrated another sexual assault against Donna W. (Filing 1 at 13.) Plaintiffs allege that defendants were aware of the prior assaults perpetrated by "R" and "F," yet failed to take corrective actions. (Filing 1 at 13.) Plaintiffs also contend that the failure to protect Debra W. was the result of or constituted an established custom, practice, or policy of the defendants. (Filing 1 at 13.) As a result of the attacks,

Debra W. has suffered severe emotional, physical, and psychological injuries. (Filing 1 at 13.)

### Carolina C.

Plaintiffs allege that patient "J" sexually assaulted Plaintiff Caroline C. on November 1, 1992. (Filing 1 at 14.) Caroline C. reported the assault to HRC staff; however, the staff concluded that the sex was consensual and thus did not report the incident to law enforcement or to Caroline's legal guardian. (Filing 1 at 14.) Thereafter, "R" sexually assaulted Caroline C. in April of 1993. Plaintiffs allege that defendants were aware of prior actions of "J" and "R," yet failed to take corrective actions pursuant to the established custom, practice, or policy of the institution.[5] As a result of the assaults, Caroline C. suffered severe physical emotional, and psychological injuries requiring extensive counseling and mental health treatment. (Filing 1 at 15.)

### Billie V.

According to the allegations of the complaint, on July 7, 1994 Plaintiff Billie V. was raped next to a cemetery located near HRC, by male patient "J," who had previously assaulted Debra W. on July 7, 1991 and September 1992, patient Linda W. on September 26, 1992, Caroline C. on November 1, 1992, patient Brenda G. on May 22, 1993, and Donna W. on June 10, 1993. (Filing 1 at 15.) Plaintiffs contend that the defendants were aware of prior actions of "J," yet failed to take corrective actions. (Filing 1 at 16.) In addition, on July 7, 1994 Billie V. reported the rape to HRC staff, but the defendants did not immediately investigate the incident. (Filing 1 at 16.) Instead, on July 12, 1994 Billie V was placed on ward restriction and prohibited from attending activities, treatment groups, and group programs. (Filing 1 at 16.) Patient "J," however, was not placed

---

**3.** "J," "R," and "F" had also assaulted Plaintiff Debra W. on July 7, 1991 and December 6, 1992; patient Linda W. on September 26, 1992; Plaintiff Caroline C. on November 1, 1992 and April 1993; and patient Brenda G. on May 22, 1993. (Filing 1 at 11–12.)

**4.** "R" later sexually assaulted patient Linda W. on September 26, 1992; Plaintiff Caroline C. on

April 1993; and Plaintiff Donna W. on June 10, 1993. (Filing 1 at 12.)

**5.** "J" and "R" perpetrated assaults against Debra W. on July 7, 1991 and September 1992; Linda W. on September 26, 1992; Brenda G. on May 22, 1993; and Donna W. on June 10, 1993. (Filing 1 at 14.)

on ward restriction and was allowed to attend all activities. (Filing 1 at 16.)

### Class–Based Claims for Relief

During the time of the alleged assaults 1,037 women have been patients at HRC. Of those women approximately fifty have been subjected to rape, sexual assault, and physical assault while patients at the Hastings Regional Center. (Depo. of Frederick Echternacht at 15, 66; Defendant's Answer to Plaintiffs' First Set of Interrogatories at #7.) Plaintiffs contend that "women with mental illnesses and psychiatric disabilities are particularly vulnerable to sexual assault, victimization, and sexual exploitation at custodial institutions[,]" and the defendants have a duty to protect them from rape and sexual victimization. (Filing 1 at 17–19.)

Plaintiffs maintain that the policies and practices of the defendant officials have increased the risk of sexual assaults, and the defendants' actions following the assaults aggravated the harm suffered by the victims. (Filing 1 at 20–32.) They assert the following causes of action in their complaint: (1) failure to protect plaintiffs from harm in violation of the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the U.S. Constitution; (2) denial of plaintiffs' right to treatment in violation of the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the U.S. Constitution; (3) violation of the Americans with Disabilities Act; (4) violation of the Rehabilitation Act; (5) violation of equal protection; and (6) violation of Nebraska state law. (Filing 1 at 17–32.)

In particular, plaintiffs allege that since 1991 the defendants allowed known rapists and sexually-aggressive males to have unmonitored contact with women patients and failed to take reasonable steps to protect them, such as placing sexually-aggressive patients on ward and grounds restriction, placing sexually-aggressive patients in a more secure facility, and enacting screening procedures to ascertain sexually-aggressive patients before an assault had been perpetrated. (Filing 1 at 20–21.) Plaintiffs also allege that the defendants have failed to train their employees to report and investigate complaints of sexual assault, failed to screen patients for prior sexual victimization and

vulnerability to future victimization, failed to implement appropriate "psychosocial sex education courses or assertiveness training to ... class members[,]" and "failed to provide appropriate psychiatric and psychological counseling and therapy to treat the trauma and harm to Plaintiffs and class members[.]" (Filing 1 at 21–24.) Plaintiffs also contend that the defendants developed a policy of "trading" sexually-aggressive patients among the three state mental-health institutions and "adopted a policy, practice[,] or custom of restricting privileges to those Plaintiffs and class members who notified Defendants and their employees and agents of the rapes and sexual assaults by male patients." (Filing 1 at 21–22.) They request declaratory and injunctive relief on a class-wide basis.

## CLASS CERTIFICATION

Plaintiffs seek class certification under Federal Rule of Civil Procedure 23 of the following class: "all women who are currently patients at the Hastings Regional Center (HRC), and all those women who were in the custody of the Defendants at the HRC, during all material times, or in the future." (Filing 1 at 8; plaintiffs' Brief at 1.) The proposed class is said to include the following subclasses: (1) all women patients who have been sexually assaulted by male patients at HRC; and (2) all women who are currently patients at HRC or were patients at HRC at the time of the assaults. (*See* filing 1 at 8; *see generally* Plaintiffs' Brief.) Plaintiffs Caroline C., Donna W., Debra W., and Billie V. are the proposed representatives of the class. (*See* filing 1 at 8.)

Rule 23(a) permits class certification where

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1539 (8th Cir.1996). Each element of Rule 23(a) must be satisfied in order to obtain certification of the class.

3B *Moore's Federal Practice* ¶ 23.02[2.1], at 23–40.[6] "In addition, all four requirements of Rule 23(a) must be met with respect to each subclass...." *Roby v. St. Louis South-western Ry. Co.*, 775 F.2d 959, 961 (8th Cir. 1985). Further, plaintiffs must satisfy one of the three alternative requirements of Rule 23(b) *Id.* Those requirements are addressed following discussions of the appropriate definition of the class and the requirements of Rule 23(a).

 The party seeking certification of the class bears the burden of proving that the requirements for certification have been met. *Bishop v. Committee on Prof. Ethics*, 686 F.2d 1278, 1288 (8th Cir.1982); *Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 55 (8th Cir.1977).[7] "Class certification must be based on the facts and circumstances of each individual case, and must depend upon a careful balance between the convenience of maintaining a class action and the need to guarantee adequate representation to the class members." *Wright v. Stone Container Corp.*, 524 F.2d 1058, 1061 (1975). "District courts ultimately retain broad discretion in determining whether or not to certify a class under Rule 23." *Lockwood Motors, Inc. v. General Motors Corp.*, 162 F.R.D. 569, 573 (D.Minn.1995) (*citing General Telephone Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982)); *see also Sperry*

*Rand Corp. v. Larson*, 554 F.2d 868, 873 (8th Cir.1977) ("The trial court is, of necessity, clothed with a good deal of discretion in determining the appropriateness of a class action.").

### 1. Definition of the Class

"Although not specifically mentioned in the rule, the definition of the class is an essential prerequisite to maintaining a class action." *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir.1976); 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1760, at 115; 3B *Moore's Federal Practice* ¶ 23.04[1], at 23-98–99. "[T]he membership of the class must be capable of ascertainment under some objective standard so that the court may insure that the interests of the class are adequately represented." *Moore's, supra*, at 23–104–05. Further, the class definition must not be defined so broadly that it encompasses individuals with little connection to the claims at issue, and the boundaries of the class must not be amorphous. *Federal Practice, supra*, at 120–126.

### a. Arguments Raised By the Parties

 In this case defendants argue that plaintiffs' proposed class, "all women who are currently patients at the Hastings Regional Center (HRC), and all those women who

---

6. Any type of civil claim, federal or state, may be maintained as a class action in federal court, and Rule 23 should be liberally construed and applied. 3B *Moore's Federal Practice* ¶ 23.02[4], at 23–70 and 71 (*citing Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2nd Cir.1968)).

7. The court may not consider the factual merits or weaknesses of plaintiffs' underlying claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722, *reh'g denied*, 832 F.2d 1267 (11th Cir.1987); *Redditt v. Miss. Extended Care Centers*, 718 F.2d 1381 (5th Cir.1983); *Anderson v. City of Albuquerque*, 690 F.2d 796 (10th Cir.1982). For purposes of a motion for certification the *substantive* allegations of the complaint "are accepted as true." *Lockwood Motors, Inc. v. General Motors Corp.*, 162 F.R.D. 569, 573 (D.Minn.1995); *Jenson v. Eveleth Taconite Co.*, 139 F.R.D. 657, 659 (D.Minn.1991). Thus, defendants' arguments that their actions were reasonable under the circumstances and did not violate any statutory or constitutional provisions, (*see* Defendant's Brief

at 2–3, 12, 14–17, and 23), and that they have taken sufficient steps to remedy any deficiencies in their operating procedures, (*see* Defendant's Brief at 6), cannot be considered. *Eisen, supra*. However, the court is required to look beyond the pleadings to documentary evidence submitted by the parties in determining whether the specific requirements for certification have been met. *Bishop v. Committee on Prof. Ethics*, 686 F.2d 1278, 1288 (8th Cir.1982); *Int'l Woodworkers v. Georgia–Pacific Corp.*, 568 F.2d 64 (8th Cir.1977); *Walker v. World Tire Corp.*, 563 F.2d 918, 921 (8th Cir.1977).

As a final note, defendants' contention that the class should not be certified because some aspects of plaintiffs' claims are moot is not supported by the case they cite, *Giles v. City of Prattville*, 556 F.Supp. 612, 615 (M.D. Ala. 1983). In *Giles*, the defendant assured the court that during the pendency of the case he would not engage in the conduct at issue. *Id.* Here, defendants have given no such assurances, and even if they had, the Eighth Circuit has not recognized that such assurances may be considered in determining whether to certify a class.

were in the custody of the Defendants at the HRC, during all material times, or in the future," is ill-defined and untenable. (Defendants' Brief at 3–4.) I disagree.

Defendants admit, although somewhat equivocally, that the subclass of fifty women who have actually been assaulted by male patients at HRC is reasonably definite.[8] However, they argue that "[p]laintiffs have not demonstrated how their proposed class of 1037 and more importantly the future class[ ] have suffered a constitutional or statutory violation inflicted by Defendants." (Defendants' Brief at 4.) Defendants cite a decision of the Court of Appeals for the Seventh Circuit, *Adashunas v. Negley*, 626 F.2d 600, 603 (7th Cir.1980), in support of their argument.

In *Adashunas*, the Seventh Circuit affirmed the denial of certification of a class composed of all learning-disabled children in the state of Indiana. The court found identifying learning-disabled children to be "a gargantuan task," because it often requires two or three years of testing to determine if a single child is learning disabled. *Id.* at 603–04. Consequently, the court held the class was "so highly diverse and so difficult to identify that it [was] not adequately defined or nearly ascertainable." *Id.* at 604. In addition, the court noted that "since the proposed class [was] so amorphous and diverse, it [could] not be reasonably clear that the proposed class members ha[d] all suffered a constitutional or statutory violation warranting some relief." *Id.*

Defendants contend that a class composed of those women who are currently patients at HRC, as well as those women who were patients at HRC at the time of the assaults and those women who will be patients at

HRC in the future, cannot be maintained because plaintiffs "have not demonstrated how those persons have suffered a constitutional or statutory violation inflicted by the Defendants." (Defendant's Brief at 4.) This contention, as argued, is without merit for four principal reasons.

First, the statement of the court in *Adashunas* that "it [could] not be reasonably clear that the proposed class members ha[d] all suffered a constitutional or statutory violation warranting some relief[ ]" was premised on its finding that defining a class of learning-disabled children is virtually impossible. *Id.* at 603–04. The task of defining whether one particular child is learning-disabled is itself "gargantuan"; the task of determining whether the defendants in that case failed to comply with constitutional or statutory provisions such as the Education for All Handicapped Children Act, 20 U.S.C. § 1413, would have been even more troublesome for an entire class of children who were allegedly learning disabled. *Adashunas*, 626 F.2d at 604. Thus, the circuit court's declaration in *Adashunas* that certification was inappropriate because the court could not determine whether "proposed class members ha[d] all suffered a constitutional or statutory violation warranting some relief[ ]" cannot be divorced from the specific factual context of that case. *See Id.* at 603–04.

Second, unlike *Adashunas*, in this action there is little difficulty in determining whether a person is a member of the class at issue. Residential treatment at HRC provides a definite boundary between those women who are members of the putative class and those who are not.

■ Third, despite the defendants' statements to the contrary, a litigant need not

---

8. Although defendants suggest that plaintiffs have "fail[ed] to show how the alleged assaults occurred as a result of or the lack thereof of policies and procedures of HRC[,]" (Defendants' Brief at 4), this suggestion is belied by the allegations of the complaint, which must be taken as true for purposes of the motion for certification. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Lockwood Motors, Inc. v. General Motors Corp.*, 162 F.R.D. 569, 573 (D.Minn.1995); *Jenson v. Eveleth Taconite Co.*, 139 F.R.D. 657, 659 (D.Minn.1991). Among other things, plaintiffs allege that the

defendants have allowed known rapists and sexually-aggressive males to have unmonitored contact with women patients, failed to train their employees to report and investigate complaints of sexual assault, failed to screen patients for vulnerability to sexual victimization, "traded" sexually-aggressive patients among the three state mental-health institutions, and "adopted a policy, practice[,] or custom of restricting privileges to those Plaintiffs and class members who notified Defendants and their employees and agents of the rapes and sexual assaults by male patients." ·(Filing 1 at 21–24.)

wait to bring a failure to protect claim against officials until she has actually been assaulted. *Baby Neal For and By Kanter v. Casey,* 43 F.3d 48, 56 (3rd Cir.1994) ("[C]lass members can assert ... a single common complaint even if they have not all suffered actual injury; demonstrating that all class member are subject to the same harm will suffice."); *see also Farmer v. Brennan,* 511 U.S. 825, 844–46, 114 S.Ct. 1970, 1983, 128 L.Ed.2d 811 (1994) (a prisoner need not wait until he or she has been assaulted to bring a failure to protect claim under the Eighth Amendment against prison officials). The allegations (taken as true for purposes of this motion) that plaintiffs' now fear for their safety as a result of defendants' actions or omissions is sufficient to confer standing on the absent class members. *See Baby Neal,* 43 F.3d at 48.

■ Fourth, numerous courts have certified classes composed, in part, of persons who will be subject to a policy or practice that may in the future subject them to harm. *See, e.g., Ahrens v. Thomas,* 570 F.2d 286, 288 (8th Cir.1978) ("all present and future pretrial detainees at the Platte County Jail"); *Gieseking v. Schafer,* 672 F.Supp. 1249, 1251 (W.D.Mo.1987) ("all handicapped persons within the State of Missouri who have been or will be determined by the Missouri Department of Mental Health ("DMH") or one of its regional centers to be mentally disabled and for whom DMH and its regional centers have failed or will fail to develop individual habilitation/treatment plans or to secure treatment"); *Coleman v. Wilson,* 912 F.Supp. 1282, 1293 (E.D.Cal.1995) ("all inmates with serious mental disorders who now or who will in the future be confined within the California Department of Corrections"); *Medley v. Ginsberg,* 492 F.Supp. 1294 (S.D.W.V.1980) (all persons under the age of twenty-three "who now or will in the future be institutionalized by reason of the failure of the named defendants" to provide foster homes); *Woe v. Mathews,* 408 F.Supp. 419,

429 (E.D.N.Y.1976), *remanded in part on other grounds sub. nom., Woe v. Weinberger,* 556 F.2d 563 (2nd Cir.1977) ("all persons between the ages of 21 and 65 who are or will be involuntarily civilly committed to New York State mental institutions"); *D.W. v. Poundstone,* 165 F.R.D. 661, 669 (M.D.Ala. 1996) ("all adolescent youth who have been or will be committed to the Alabama Department of Mental Health and Mental Retardation").[9] As such, I conclude that plaintiffs may certify a class composed of those who have not yet been injured by the allegedly defective policies, but that are or will in the future be exposed to a risk of harm as a result of the policies.

Finally, defendants argue that the proposed class of those women who are now or will in the future be patients at HRC should not be certified because "any relief that this court could potentially grant as to one of the 50 persons [who have already been raped or sexually assaulted] would be good as to [the broader class.] The relief requested by virtue of the complaint is systemic: in nature, [sic] therefore, it follows that any change will affect all persons at HRC who either now reside or who are potential patients at HRC." (Defendants' Brief at 4.) Defendants' argument has already been rejected, however, by the drafters of the Federal Rules of Civil Procedure. Rule 23 was enacted so persons who might as a practical matter be bound by a judgment in an individual action would have representation, and the rule permits issues affecting a substantial number of litigants to be resolved in a single action, thereby promoting efficient resolution of disputes and avoiding conflicting judgments. *See* 1966 Committee Note to Rule 23(b)(1). Thus, defendants' argument that the putative class should not be certified because of the systemic nature of the relief requested is not well taken.

### b. Mootness

■ The class proposed by the plaintiffs for certification consists of "all women who

---

9. "The fact that the classes may include persons who are not identifiable at the present, or that class membership may change by the end of trial, is no impediment to the certification of these, classes." *Johnson v. Brelje,* 482 F.Supp. 121, 123 (N.D.Ill.1979). In addition, where certifica-

tion is sought under Rule 23(b)(2) "precise definition [of the class] is not as important as it may be under other class certification rules." *Anderson v. Coughlin,* 119 F.R.D. 1, 3 (N.D.N.Y. 1988) (citing *Yaffe v. Powers,* 454 F.2d 1362 (1st Cir.1972).

are currently patients at the Hastings Regional Center (HRC), and all those women who were in the custody of the Defendants at the HRC, during all material times, or in the future." (Filing 1 at 8; Plaintiffs' Brief at 1.) As discussed above, a class consisting of those women who are currently patients at HRC and those women who will be patients at HRC may be certified, because according to the allegations of the complaint those women are or will be subject to policies and practices that create a risk of harm to them. Additionally, those women who have been raped or assaulted by male patients at HRC have obviously suffered actual harm and may bring an action in this court, even if they are not now there residing. A problem arises, however, with those women who are no longer patients at HRC and were not raped or assaulted. They suffered, and will suffer, no actual injury. Nothing this court could do under Rule 23(b)(2) would or could affect their residency at HRC. Consequently, it appears that those claims are moot, and no justiciable controversy exists under Article III, § 2 of the United States Constitution. *City of Los Angeles v. Lyons,* 461 U.S. 95, 107, 109, 103 S.Ct. 1660, 1668, 1669, 75 L.Ed.2d 675 (1983); *Sosna v. Iowa,* 419 U.S. 393, 399, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975); *DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 1705–06, 40 L.Ed.2d 164 (1974); *Roe v. Wade,* 410 U.S. 113, 127, 93 S.Ct. 705, 714, 35 L.Ed.2d 147 (1973).[10]

■■■■■ "[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). Therefore, in order to avoid a justici-

ability problem under Article III, § 2 of the Constitution, I shall recommend that the class of plaintiffs be redefined as follows: All women who have been sexually assaulted or raped by male patients at the Hastings Regional center, and all women who are or in the future will be patients at the Hastings Regional Center.[11] *See Nix v. Fulton Lodge No. 2 of Intern. Ass'n of Machinists & Aerospace Workers,* 452 F.2d 794, 796 (5th Cir.), *cert. denied,* 406 U.S. 946, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972) (district court properly limited a class to avoid justiciability problems) I now turn to the specific requirements of Rule 23(a). *Roman v. ESB, Inc.,* 550 F.2d 1343, 1348 (4th Cir.1976).

### 2. Requirements of Rule 23(a)

#### a. Numerosity

■■■■■ Rule 23(a) first requires the party seeking certification to demonstrate that the proposed class is "so numerous that joinder of all members is impracticable." *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 559 (8th Cir.1982), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983). "In assessing impracticability the court should exercise common sense and give due consideration to concerns of judicial economy and access to the legal system." *D.W. v. Poundstone,* 165 F.R.D. 661, 670 (M.D.Ala.1996). Plaintiffs need not show that joinder is impossible, but that joining all members of the class would be difficult. *Robidoux v. Celani,* 987 F.2d 931 (2nd Cir.1993); *Harris v. Palm Springs Alpine Estates,* 329 F.2d 909, 913–14 (9th Cir.1964); *Lockwood,* 162 F.R.D. at 574. No absolute or arbitrary number satisfies the

---

10. It is obvious from plaintiffs' complaint that the claims of these plaintiffs are moot, because they did not suffer and will not suffer injury as a result of defendants' policies (unless they are readmitted to HRC at which point they will become part of the class). This type of "mootness" must be distinguished from the type of "mootness" raised in defendants' brief, which asserts that some policies at HRC have already been changed. Not only are defendants' references to and documentation of those changes vague, but the matter is more appropriate for summary judgment where the issue can be fully briefed and proper evidence submitted.

11. A district court has broad discretion to define a class of plaintiffs under Fed.R.Civ.P. 23. *Gilmore v. Kansas City Terminal Railway Co.,* 509 F.2d 48, 51 n. 3 (8th Cir.1975); *Thomas v. Clarke,* 54 F.R.D. 245 (D.Minn.1971), *vacated on other grounds,* 468 F.2d 359 (4th Cir.1972). Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 7A *Federal Practice and Procedure* § 1759 at 111–12 (citing *Geraghty v. U.S. Parole Comm'n,* 719 F.2d 1199 (3rd Cir.) *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 133 (1983) and *Nix v. Fulton Lodge No. 2 of the Int'l Ass'n of Machinists & Aerospace Workers,* 452 F.2d 794 (5th Cir.), *cert. denied,* 406 U.S. 946, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972).

numerosity requirement. *Paxton*, 688 F.2d at 559; *Lockwood*, 162 F.R.D. at 574.

> Certainly, where the class is very large— for example numbering in the hundreds— joinder will be impracticable.... In light or prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.

Newberg, *Class Actions* § 3.05, at 3–25; *see also Robidoux*, 987 F.2d at 936; *Lockwood*, 162 F.R.D. at 574, 3B *Moore's Federal Practice* § 23.05[1], at 23–143–45 (2d ed.1995) ("while there are exceptions, numbers in excess of forty, particularly numbers in excess of one hundred ... have sustained the [numerosity] requirement").

■ In this case the class, as redefined by the court, consists of all women who have been sexually assaulted or raped by male patients at the Hastings Regional center, and all women who are or in the future will be patients at the Hastings Regional Center. The class also includes the following subclasses: (1) all women patients who have been sexually assaulted or raped by male patients at HRC (approximately 50); and (2) all women who are or will be patients at HRC (an indeterminable number). (*See* filing 1, at 8; *see generally* Plaintiffs' Brief.)[12]

It is clear the numerosity requirement has been satisfied with respect to the second subclass. "Since there is no way now of determining how many of these future plaintiffs there may be, their joinder is impracticable." *Ellis v. Naval Air Rework Facility*, 404 F.Supp. 391, 396 (N.D.Cal.1975), *rev'd on other grounds*, 608 F.2d 1308 (9th Cir.1979); *see also Gordon v. Forsyth County Hospital Authority*, 409 F.Supp. 708, 717 (M.D.N.C.), *vacated in part on other grounds*, 544 F.2d 748 (4th Cir.1976). Moreover, during the last eight years at least 1,037 women have been patients at HRC. (Depo. of Frederick Echternacht at 15, 66). Hence, the number of women who could be members of the class

during the pendency of this litigation is substantial.

■ Also with respect to the subclass of fifty women who have been assaulted by male patients at HRC, I conclude that the numerosity requirement has been met. As noted above, courts generally conclude that joinder is impractical when the class exceeds forty members. *Robidoux*, 987 F.2d at 936; *Lockwood*, 162 F.R.D. at 574, 3B *Moore's Federal Practice* ¶ 23.05[1], at 23–143–45 (2d ed.1995); . Newberg, *Class Actions* § 3.05, at 3–25. "In addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual claims, and any other factor relevant to the practicability of joining all the putative class members." *Paxton*, 688 F.2d at 559–60. "Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Robidoux*, 987 F.2d at 936.

In this case the particular circumstances of the members of the subclass, coupled with the size of the subclass, almost necessitate certification. The women who compose the subclass have all experienced mental and psychological problems to such a degree that residential treatment in an institutional setting has been necessary. (Filing 1 at 1–5, 8–10; Defendant's Brief at 6.) Potential lack of knowledge and sophistication of the class members place them in a poor position to seek legal redress individually. *See Gordon v. Forsyth County Hospital Authority, Inc.*, 409 F.Supp. 708, 717 (M.D.N.C.), *aff'd in part and vacated in part on other grounds*, 544 F.2d 748 (4th Cir.1976). While as the defendants correctly point out Nebraska Advocacy Services is charged by state law with advocating for the women, joinder of the women in this case would require not only participation of the patients, but also participation of their legal guardians. The inconvenience to the plaintiffs and to the court if

---

12. "[A]ll four requirements of Rule 23(a) must be met with respect to each subclass...." *Roby v.* *St. Louis Southwestern Ry. Co.*, 775 F.2d 959, 961 (8th Cir.1985).

the case were to proceed under such circumstances simply cannot be justified.[13] *See Paxton,* 688 F.2d at 559–60. In light of the number of women involved and their special circumstances, I conclude that plaintiffs have met the numerosity requirement of Rule 23(a)(1) with respect to both subclasses.

### b. Commonality

 The federal rules require the existence of common questions of law or fact among the members of the class. *Paxton,* 688 F.2d at 561. However, "[t]he rule does not require that every question of law or fact be common to every member of the class.... " *Id.* "Instead, Rule 23(a)(2) requires only that the course of conduct giving rise to a cause of action affects all class members, and that at least one of the elements of that cause of action is shared by all class members." *Lockwood Motors, Inc. v. General Motors Corp.,* 162 F.R.D. 569, 575 (D.Minn.1995) *(citing Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1106 (5th Cir.1993); *see also Baby Neal v. Casey,* 43 F.3d 48, 56 (3rd Cir.1994).

 Common questions of law and fact clearly exist in this case. Plaintiffs allege that the policies and practices of the defendant officials, enumerated at length above, increase the risk of sexual assaults at HRC and violate the Americans with Disabilities Act, the Rehabilitation Act, and several provisions of the U.S. Constitution, by failing to protect members of the class from harm and denying them adequate treatment. (Filing 1 at 17–32.) As all members of the class, as redefined by the court, are or will be subject to the defendants' policies and practices while they are patients at HRC, it is quite clear that "the course of conduct giving rise to a cause of action affects all class members." *Lockwood,* 162 F.R.D. at 575 *(citing Forbush,* 994 F.2d at 1106). Moreover,

where, as here, plaintiffs are not seeking individualized damage awards, "injunctive actions 'by their very nature often present common questions satisfying Rule 23(a)(2).' " *Baby Neal,* 43 F.3d at 57 *(quoting* 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1763, at 201).

Defendants do point to minor factual issues that may vary somewhat among class members, such as admission status of class members upon entering HRC. (*See* Defendants' Brief at 17.) However, the Rule 23(a)(2) commonality standard is qualitative, not quantitative. Newberg, *Class Actions* § 3.10, at 3–50 (citing cases). "The rule does not require that every question of law or fact be common to every member of the class...." *Paxton,* 688 F.2d at 561. The issues at the core of this litigation, specifically whether the policies and practices of the defendants with respect to their control of sexual perpetrators increase the risk of rape and sexual assault, are common to all class members, and all members of the class are or will be subject to the effects of those policies. *See Streicher v. Prescott,* 103 F.R.D. 559, 561–62 (D.D.C.1984) (rejecting an argument that minor differences in patient status and mental and emotional conditions undercut the viability of class certification). As such, I conclude that the commonality requirement has been met. *Baby Neal* 43 F.3d at 56; *Paxton,* 688 F.2d at 561; *Forbush,* 994 F.2d at 1106; *Lockwood,* 162 F.R.D. at 575.

### c. Typicality

 A class representative "must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982). "Typicali-

---

13. Defendants argue that the numerosity requirement has not been met because the fifty women who have been raped or assaulted are from the same geographic area and thus may easily be joined as plaintiffs. *See Andrews v. Bechtel Power Corp.,* 780 F.2d 124 (1st Cir.1985), *cert. denied,* 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986). However, defendants merely "assume[ ] for purposes of this argument that Plaintiffs are from Nebraska since they were patients at a Nebraska institution." (Defendant's Brief at 7).

They present no evidence supporting their assumption. As such, their argument is merely speculation and must fail. *Bishop v. Committee on Prof. Ethics,* 686 F.2d 1278, 1288 (8th Cir. 1982) (the court must look to documentary evidence submitted by the parties when determining whether the requirements for Rule 23 certification have been met); *Int'l Woodworkers v. Georgia–Pacific Corp.,* 568 F.2d 64 (8th Cir.1977) (same); *Walker v. World Tire Corp.,* 563 F.2d 918, 921 (8th Cir.1977) (same).

ty under Rule 23(a)(3) means that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1540 (*quoting Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir.), *cert. denied,* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977)). The burden is met as long as other members of the class possess claims similar to those of the named plaintiffs. *Alpern,* 84 F.3d at 1540. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.; Robidoux,* 987 F.2d at 936; *In re Potash Antitrust Litigation,* 159 F.R.D. 682, 690 (D.Minn.1995); *Lockwood,* 162 F.R.D. at 575.

 In this case the named plaintiffs' allegations that the policies and practices of the defendants have increased the risk of rapes and assaults by sexual perpetrators are typical of those of the other class members. The alleged failures of the defendants to monitor known rapists, adequately train employees, and install screening procedures to ascertain sexually-aggressive patients when they are admitted to the facility, (*see* filing 1 at 20–21), involve the same general course of conduct that allegedly affects both the named plaintiffs and other members of the class. The alleged failure of the defendants to enact reasonable policies and practices raises a similar risk of harm for named plaintiffs and absent class members.[14] Moreover, the evidence submitted by plaintiffs in support of this motion indicates that the defendants

themselves have treated the allegations of the named defendants as typical of those of other patients. (*See, e.g.,* Memo dated October 10, 1992 of Alan Smith submitted as Attachment 6.) In short, the interests of the named plaintiffs in protecting themselves from rapes and assaults by male patients at HRC clearly align with those of the members of the class as a whole.[15]

 The same cannot be said, however, for the claim relating to defendants' treatment of Billy V. after she had been assaulted. It is alleged that after Billie V. reported the rape to HRC staff, the defendants failed to report or investigate the claim; instead, they placed her on ward restriction and prohibited her from attending activities, treatment groups, and group programs. However, the alleged rapist, Patient "J," was not placed on ward restriction and was allowed to attend all activities. (Filing 1 at 16.) Consequently, plaintiffs assert that the defendants have "adopted a policy, practice[,] or custom of restricting privileges to those Plaintiffs and class members who notified Defendants and their employees and agents of the rapes and sexual assaults by male patients[,]" thereby violating state and federal law. (Filing 1 at 21–22.) Plaintiffs, however, offer no evidence that any other named plaintiff or any other member of the proposed class was subject to such restrictions after reporting an assault.

 In order to satisfy Rule 23(a)(3), the moving party must identify other persons who have been subject to the same treat-

---

14. Defendants' contention that the harm suffered by the plaintiffs is different in each case is specious. They argue that the plaintiffs, upon being raped or assaulted, will each have suffered a different harm, and they cite *Jeannides v. U.S. Home,* 114 F.R.D. 29 (N.D.Ill.1987), in support of their contention. In that case a district court held that a class action could not be maintained by a group of homeowners whose houses had all been built by the defendant, because the nature of the alleged construction defects was unique for each plaintiff. *Id.* at 30. Needless to say, it stretches the bounds of credulity to assert that the myriad of defaults that might exist in a house because of shoddy workmanship are somehow akin to the damages suffered by a woman after being raped. Moreover, that case is easily distinguished from the one at bar because the plaintiffs

in *Jeannides* were seeking damages from the defendant under Rule 23(b)(3), while this action involves only a request for injunctive and declaratory relief under Rule 23(b)(3).

15. The fact that each of the four named plaintiffs was raped or assaulted by the same male patients at HRC has no bearing on the issue of certification. First, fifty assaults were perpetrated, apparently by several male patients at HRC, over a period of time. (*See* Defendants' Response to Request for Documents referred to as Attachment 12; Depo. of Frederick Echternacht and attachments referred to as Attachment 11.) Second, the defendants' institutional policies and practices are at issue, not just their actions regarding patients "R," "J," and "F."

ment. *Tate v. Weyerhaeuser Co.*, 723 F.2d 598, 608–09 (8th Cir.1983), *cert. denied*, 469 U.S. 847, 105 S.Ct. 160, 83 L.Ed.2d 97 (1984); *Belles v. Schweiker*, 720 F.2d 509, 513 (8th Cir.1983); *Wright v. Stone Container Corp.*, 524 F.2d 1058, 1062 (8th Cir.1975). Typicality "requires a demonstration that there are other members of the class who have the same or similar grievances...." *Tate*, 723 F.2d at 609 (*quoting Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir.1977). Plaintiffs have failed to carry that burden with respect to defendants conduct following the report of the rape of Billie V. Therefore, I shall recommend that plaintiffs' motion to certify be denied with respect to plaintiffs' claim that defendants have adopted a practice of restricting the privileges of those who report that they have been assaulted or raped. *Tate*, 723 F.2d at 608–09; *Belles*, 720 F.2d at 513; *Wright*, 524 F.2d at 1058. However, as discussed above, the typicality requirement has been satisfied with respect to plaintiffs' other claims.

### d. Adequate Representation

■ Rule 23 (a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R.Civ.P. 23(a)(4). Plaintiffs must establish that "(1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously, and (2) each representative's interests are sufficiently similar to those of the class such that it is unlikely that their goals and viewpoints will diverge." *Lockwood*, 162 F.R.D. at 576; *see Paxton*, 688 F.2d at 562–63; *Hervey v. City of Little Rock*, 787 F.2d 1223, 1230 (8th Cir. 1986); *Dirks v. Clayton Brokerage Co. of St. Louis*, 105 F.R.D. 125, 133 (D.Minn.1985).

■ Defendants do not contest that plaintiffs' attorneys are capable of vigorously and competently representing the class. (Defendants' Brief at 21.) While defendants speculate that the interests of the class might conflict at some point in the litigation, they

offer no evidence, other than speculation, of such a conflict.[16] Furthermore, a court may not refuse to certify a class simply because it believes "members of the class may [at some point] prefer to leave [a] violation of their rights unremedied." *Vecchione v. Wohlgemuth*, 80 F.R.D. 32, 52 (E.D.Pa.1978) (*citing* 3B *Moore's Federal Practice* ¶ 23.06–2 at 23–327 (1976)). Therefore, I conclude that plaintiffs have met this requirement.

### 3. Rule 23(b)

In addition to satisfying the requirements of Rule 23(a), plaintiffs must also satisfy one of the following prerequisites for class certification contained in Rule 23(b).

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair of impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fair and efficient adjudication of the controversy.

---

16. In fact, defendants' example of a potential conflict is as follows: "if a potential class member has a similar situation [to, that of Billie V.] where ward restriction is also necessary but HRC fails to restrict that patient, and another incident occurs to that patient, the class could potentially conflict with each other...." (Defendants' Brief at 21.) However, as I shall recommend the ward-restriction claim of Billie V. not be certified, defendants' argument is without force.

Fed.R.Civ.P. 23(b). The burden of demonstrating that at least one of the prerequisites for certification has been satisfied is on the moving party. 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1759, at 102.[17] In the present case plaintiffs seek certification under Rule 23(b)(1) and 23(b)(2), but not 23(b)(3). (Plaintiffs' Brief at Part II.)

### a. Rule 23(b)(2)

 The class in this case, as redefined by the court, clearly falls within the parameters of the injunctive provision of Rule 23(b)(2). As the Third Circuit has noted, Rule 23(b)(2) "is almost automatically satisfied in actions primarily seeking injunctive relief." *Baby Neal*, 43 F.3d at 58; *Weiss v. York Hosp.*, 745 F.2d 786, 811 (3rd Cir. 1984). In the present case plaintiffs seek only injunctive and declaratory relief. (Filing 1 at 32–39.) Further, plaintiffs seek to prohibit defendants from maintaining policies and practices that allegedly violate the Constitution and state and federal civil rights laws. (Filing 1 at 20–32.) "Rule 23(b)(2) was enacted in part for the specific purpose of assuring that the class action device would be available as a means of enforcing the civil rights statutes." 3B *Moore's Federal Practice* ¶ 23.02[2.6], at 23–44; Newberg, *Class Actions* § 4.11, at 4–37. Where, as here, plaintiffs seek to redefine the relationship between the defendants and the entire class, certification under Rule 23(b)(2) is appropriate. *Baby Neal*, 43 F.3d at 59. Because the defendants' alleged refusal to act—in this case by refusing to institute such policies as monitoring and pre-admission screenings—is generally applicable to the entire class, and final injunctive and declaratory relief is requested on behalf of the entire class, certification is appropriate under Rule 23(b)(2). 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1775, at 448. *See. e.g. D.W. by M.J. v. Poundstone*, 165 F.R.D. 661, 671 (M.D.Ala.1996); *Ortiz v. Eichler*, 616 F.Supp. 1046 (D.Del.1985), *aff'd*, 794 F.2d 889 (3rd Cir.1986); *Cudnik v. Kreiger*, 392 F.Supp. 305 (D.C.Ohio 1974).

### b. Rule 23(b)(1)

Finally, I conclude that plaintiffs satisfy the requirements of Rule 23(b)(1)(B), but not Rule 23(b)(1)(A). Rule 23(b)(1)(B) allows for certification where "adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair of impede their ability to protect their interest." Fed. R.Civ. P. 23(b)(1)(B). An adjudication on the merits of the claims of the named plaintiffs in this case would, as a practical matter, be dispositive of the interests of the other members of the class. Any change in the policy or practices of the defendants at HRC would affect absent members of the class, because they are or will be subject to those policies or practices. Although actions involving injunctive and declaratory relief that affect the interests of an entire class are most often brought under Rule 23(b)(2), they may also be brought under Rule 23(b)(1)(B). 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1774, at 446 (citing cases). As such, I also conclude that the certification is appropriate under Rule (b)(1)(B).[18]

---

**17.** The three categories are not mutually exclusive and, in fact, overlap. 3B *Moore's Federal Practice* ¶ 23.02–1, at 23–75.

**18.** Two things are important to note. First, notice to the plaintiff class is not required under Rule 23(b)(2) or 23(b)(1)(B), *Sperry Rand Corp. v. Larson*, 554 F.2d 868, 875 (8th Cir.1977); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir.1972) (*quoted in Anderson v. Coughlin*, 119 F.R.D. 1, 3 (N.D.N.Y.1988)); *McKay v. County Election Comm. for Pulaski County*, 158 F.R.D. 620, 626 (E.D.Ark.1994) (*citing Sosna v. Iowa*, 419 U.S. 393, 397 n. 4, 95 S.Ct. 553, 556 n. 4, 42 L.Ed.2d 532 (1975)); and class members are not entitled to "opt out" of the action as they would be under Rule 23(b)(3). *Sperry Rand*, 554 F.2d at 875. Second, although the Eighth Circuit has not had an opportunity to resolve the issue, it seems likely that absent class members in a suit for equitable relief would not be precluded from seeking damages in a subsequent action. *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1175 (8th Cir.1995), *cert. denied. sub. nom.*, —— U.S. ——, 116 S.Ct. 1544, 134 L.Ed.2d 648 (1996); *Goff v. Menke*, 672 F.2d 702, 704 (8th Cir.1982). If an absent class member is not entitled to notice and may not "opt out," the due process problems with binding the absent plaintiff are evident. *Compare In re Colt Indus. Shareholder*

Finally, plaintiffs contend that certification is also appropriate under Rule 23(b)(1)(A). I conclude that it is not. Rule 23(b)(1)(A) permits certification "where the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class...." Fed. R.Civ. P. 23(b)(1)(A). This subpart of 23(b)(1) is concerned with the adverse affect on the party opposing the class if certification is not granted. 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1773, at 427. "In order to fall within Rule 23(b)(1)(A), there obviously must be a risk that separate actions will in fact be brought if a class action is not permitted. Otherwise there is no danger that incompatible standards of conduct will be formulated by the courts." *Id.* (*citing Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 564 (2nd Cir. 1968). In this matter plaintiffs have submitted no evidence indicating that such a danger exists. Consequently, plaintiffs have failed to met their burden with respect to this prerequisite, and I shall not recommend certification under 23(b)(1)(A). *Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 55 (8th Cir.1977) (moving party bears the burden of proof that all prerequisites have been satisfied); *Valentino v. Howlett*, 528 F.2d 975 (7th Cir.1976) (same).

## CONCLUSION

In summary, I conclude that the class should be redefined as follows: All women who have been sexually assaulted or raped by male patients at the Hastings Regional center, and all women who are or in the future will be patients at the Hastings Regional Center. *See Nix v. Fulton Lodge No. 2 of the Int'l Ass'n of Machinists & Aerospace Workers*, 452 F.2d 794 (5th Cir.), *cert. denied*, 406 U.S. 946, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972) (district court properly limited a class to avoid justiciability problems). Further, I conclude that plaintiffs

have satisfied the four requirements of Rule 23(a) with respect to all claims raised in the complaint, except the claim that defendants have adopted a practice of restricting the privileges of those who report that they have been assaulted or raped. *Wright v. Stone Container Corp.*, 524 F.2d 1058, 1062 (8th Cir.1975) (the moving party must identify other persons who have been subject to the same treatment as the named plaintiff); *Tate v. Weyerhaeuser Co.*, 723 F.2d 598, 608–09 (8th Cir.1983) (same). I conclude that claim is unique to Plaintiff Billie V. Finally, I conclude that the class, as redefined by the court, is appropriate for certification under Rule 23(b)(2) and 23(b)(1)(B), but not 23(b)(1)(A).

Therefore, in accordance with the foregoing,

**IT HEREBY IS RECOMMENDED** to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), that plaintiffs' motion for class certification be granted in part and denied in part. It is recommended that plaintiffs' motion for certification be denied with respect to those women patients who are no longer patients at the Hastings Regional Center and were not sexually assaulted or raped, because their claims are moot. Further, it is recommended that plaintiffs' motion to certify the claim that defendants have adopted a practice of restricting the privileges of those women patients who report that they have been assaulted or raped be denied, because plaintiffs fail to establish that claim is typical. Finally, it is recommended that the following class be certified with respect to all other claims raised in the complaint: All women who have been sexually assaulted or raped by male patients at the Hastings Regional Center, and all women who are or in the future will be patients at the Hastings Regional Center.

The parties are notified that unless objection is made within ten days after being served with a copy of this recommendation, they may be held to have waived any right

*Litig.*, 77 N.Y.2d 185, 565 N.Y.S.2d 755, 762, 566 N.E.2d 1160, 1167 (1991) *with Grimes v. Vitalink Comm. Corp.*, 17 F.3d 1553, 1560 n. 8 (3d Cir.),

*cert. denied*, 513 U.S. 986, 115 S.Ct. 480, 130 L.Ed.2d 393 (1994).

they may have to appeal the court's order adopting this recommendation.

Dated September 4, 1996.