CHRISTINA A., by and through her parent and Next Friend, JENNIFER A., et al., Plaintiffs,

v.

Jeff BLOOMBERG, in his official capacity as Secretary of the South Dakota Department of Corrections; Owen Spurell, in his official capacity as Superintendent of the State Training School at Plankinton, South Dakota, Defendants.

No. Civ.A 00–4036.

United States District Court, D. South Dakota, Southern Division.

July 7, 2000.

**666**

Wally Eklund, Charles Rick Johnson, Stephanie E. Pochop, Johnson, Eklund, Nicholson, Peterson & Fox, Gregory, SD, Mark I. Soler, Marc A. Schindler, Michael Finley, Washington, DC, for plaintiffs.

James E. Moore, William G. Beck, Woods, Fuller, Shultz & Smith, Sioux Falls, SD, James E. McMahon, Boyce, Murphy, McDowell & Greenfield, Sioux Falls, SD, for defendants.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

Plaintiffs have sought to certify this suit as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2). Defendants oppose the certification of the class. The issues were briefed and oral argument was held on April 27, 2000. The Court declined to rule on the motion at that time, allowing Defendants to take discovery of the named Plaintiffs. After discovery of the Plaintiffs was completed, Plaintiffs renewed their motion for class certification and both parties submitted additional briefs. The Defendants continue to oppose the motion. For the reasons stated below, the Plaintiffs' motion for class certification is granted.

## BACKGROUND

Plaintiffs have filed this action seeking declaratory and injunctive relief. Plaintiffs claim that the conditions of confinement and the policies, practices, acts and omissions at Plankinton subject Plaintiffs to a denial of their due process rights under the First and Fourteenth Amendments. Further, Plaintiffs claim that Defendants have deprived them of special education and related services to which they are entitled under the Individuals with Disabilities Education Act ("IDEA"). Specifically, Plaintiffs claim:

- that Defendants use mechanical restraints when such restraints are excessive and unreasonable, through, for example, "four-pointing" (Compl.¶ 30) and "bumpering" (Compl.¶ 32);

- that female Plaintiffs have been four-pointed and then forcibly stripped with the participation of male staff members (Compl.¶ 31);

- that Defendants use excessive force during "cell extractions" (Compl.¶ 33);

- that Plaintiffs are put in lockdown or isolation for arbitrary reasons, for purposes of punishment and for excessively long periods of time (Compl.¶ 36–37);

- that there is no procedure by which qualified individuals decide if and how long a Plaintiff may need to be in isolation (Compl.¶ 38);

- that the conditions of confinement in the isolation or crisis cells, including lack of counseling and education, violate Plaintiffs' rights (Compl.¶¶ 37–38);

- that Plaintiffs are subject to an "arbitrary and punitive disciplinary system" and that there is no procedural due process for disciplinary violations (Compl.¶¶ 39–43);

- that Plaintiffs are subject to a "table program" where Plaintiffs are required to sit at a table for over two days without speaking (Compl.¶ 44);

- that these arbitrary disciplinary procedures and determinations prevent Plaintiffs from successfully completing any of the programs at Plankinton because male Plaintiffs are routinely transferred from the Training School to the Juvenile Prison for these disciplinary infractions (Compl.¶¶ 35, 45);

- that Plaintiffs who suffer from mental illnesses cannot meet the disciplinary requirements and are therefore repeatedly

sent to isolation which is particularly harmful to these Plaintiffs (Compl.¶ 46);

- that Defendants provide inadequate mental healthcare for Plaintiffs in need of such care (Compl.¶¶ 54–60);

- that female Plaintiffs are subject to an abuse of privacy as a result of the presence of male staff in the shower area (Compl.¶ 47);

- that the staff at Plankinton is inadequately trained and supervised (Compl.¶¶ 49–50);

- that Plaintiffs' First Amendments rights of privacy and association are violated by the monitoring of calls and visits with family and the reading and censoring of Plaintiffs' mail (Compl.¶¶ 51–53);

- that Defendants provide Plaintiffs with an inadequate education generally (Compl.¶ 61); and

- that the rights of Plaintiffs with special educational needs under IDEA are violated by the inadequate provision of special education for those in need (Compl.¶¶ 62–67).

After the April 27, 2000 hearing, Defendants deposed the Plaintiffs and now rely on those depositions to oppose class certification on several grounds, discussed below.

## DISCUSSION

In order to have a class certified, Plaintiffs must show that they can meet all four requirements in Federal Rule of Civil Procedure 23(a) and that such class falls into one of three categories in Rule 23(b). Rule 23(a) states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

This Court finds that the Plaintiffs have met all four requirements of Rule 23(a).

### A. *Numerosity.*

The class, as defined by Plaintiffs, includes "all juveniles who are now or in the future will be confined at the State Training School in Plankinton." This class is numerous enough to make joinder impracticable. As of April 25, 2000, the Defendants reported that there were 89 juveniles at Plankinton. *See* Affidavit of James E. McMahon dated April 25, 2000. While this number is large in itself, the class extends beyond this number to include juveniles that may be confined at Plankinton in the future. The anonymity of the juveniles that may be at Plankinton in the future and the fluid nature of the population at the facility make joinder impracticable. *See Atkins v. Toan,* 595 F.Supp. 104, 105 (W.D.Mo.1984) ("Joinder of unknown persons is impracticable."); *see also A.J. v. Myers,* No. 89–1077, 1990 U.S.Dist. LEXIS 5454 at * 7 (W.D.Mo. April 30, 1990) (fluid nature of class of juvenile detainees made group "particularly suitable for class certification").

### B. *Commonality.*

While there must be questions of law or fact common to the class, these questions do not have to be common to every member. *See Paxton v. Union National Bank,* 688 F.2d 552, 561 (8th Cir.1982) *cert. denied* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983). Rule 23(a)(2) may be satisfied " 'where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.' " *Id.* (citation omitted). In *Paxton* the common question was whether the defendant had discriminatory employment practices. *Id.* The fact that each member of the class would be affected by these policies differently did not preclude a finding of commonality. *Id.* Similarly, the common question here is whether the conditions of confinement at Plankinton and the policies and procedures in place there amount to or result in constitutional deprivations of Plaintiffs' rights under the First and Fourteenth Amendments or a deprivation of Plaintiffs' rights under IDEA. *See Milonas v. Williams,* 691 F.2d 931, 938 (10th Cir.1982) *cert. denied* 460 U.S. 1069,

103 S.Ct. 1524, 75 L.Ed.2d 947 (1983). The fact that those conditions, policies and procedures affect the Plaintiffs differently does not defeat the commonality of their claims.

Defendants argue that the named Plaintiffs' claims of excessive force are not general to the class because the use of four-point restraints on four of the Plaintiffs, Shannon D., Carl F., Phillip C. and Patricia B., was based on case-specific determinations. However, the cases Defendants cite in support of this argument do not preclude a finding of commonality. In *Rubenstein v. Benedictine Hospital*, 790 F.Supp. 396 (N.D.N.Y.1992) and *Garris v. Gianetti*, 160 F.R.D. 61 (E.D.Pa.1995), the plaintiffs sought to certify classes in which the class members could not be identified without a determination of each member's claim. For example, in *Rubenstein*, the proposed class included all persons "improperly and unlawfully committed" by staff at the defendant facility, *see* 790 F.Supp. at 413, and in *Garris* the proposed class included all persons who had been subjected to excessive force by the defendant police force, *see* 160 F.R.D. at 62. Here, class members can be identified without a determination of each member's case on the merits. Further, the Plaintiffs' claims are directed towards the conditions, policies and practices at Plankinton in general and not the application of those conditions to each individual member of the class. *See Garris*, 160 F.R.D. at 63–65 (class certification denied because of pending class action which addressed the defendant police force's policies and procedures).[1]

### C. *Typicality.*

■ The typicality requirement of Rule 23(a)(3) is not an onerous one. *See Paxton*, 688 F.2d at 562. The Eighth Circuit has interpreted typicality to mean that there are " 'other members of the class who have the same or similar grievances as the plaintiff.' " *See Alpern v. UtiliCorp United, Inc.*, 84 F.3d

1525, 1540 (8th Cir.1996) (citation omitted). "Factual variations" in the claims of the Plaintiffs will not preclude class certification "if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.; see also Paxton*, 688 F.2d at 561–62. The Plaintiffs have three main claims: (1) that the conditions, policies and practices at Plankinton amount to a violation of Plaintiffs' due process rights under the Fourteenth Amendment; (2) that those conditions, policies and practices amount to a violation of Plaintiffs' First Amendment rights; and (3) that certain conditions, polices and practices violate Plaintiffs' rights under IDEA. The due process and First Amendment claims of all six Plaintiffs with regard to several of the conditions, policies and practices complained of, namely four-pointing, bumpering, excessive force during cell extraction, isolation for arbitrary reasons, the conditions in the crisis cells, the table program, the inadequate training and supervision of the staff, the lack of procedure involved in disciplinary decisions, Plaintiffs' difficulty in "successfully completing" the program due to the arbitrary disciplinary system, the monitoring of calls and visits with family, the reading and censoring of Plaintiffs' mail, and the inadequate provision of education generally, are typical of the due process claims of the entire class. The fact that each named Plaintiff has personally experienced a different combination of these conditions, policies and practices does not defeat the typicality of the claims because everyone in the class is subject to them. *See Milonas*, 691 F.2d at 938. Therefore, all the Plaintiffs' claims are based on the same legal theory regardless of the "factual variations" in their claims.[2]

There are claims, however, that are typical only for a certain group of Plaintiffs, such as claims that relate to female plaintiffs, to

---

1. In addition, Defendants note that each of these four Plaintiffs agree that the restraint was appropriate or necessary. A determination of commonality, however, should not be confused with an examination of the merits of the claim. *See Paxton*, 688 F.2d at 561.

2. Defendants also claim that the class should not be certified because the Plaintiffs testimony at the depositions do not adequately substantiate some of the Plaintiffs' claims. This argument goes to the merits of the claims and does not affect the Court's decision the certification of the class.

those plaintiffs in need of mental health services and those plaintiffs in need of special education.[3] This does not defeat a finding of typicality. Under Rule 23(c)(4) "an action may be brought or maintained as a class action with respect to certain issues, or ... a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly." Therefore, the Court must determine if subclasses relating to these particular claims may be certified under 23(a).

### 1. Subclass of Female Plaintiffs.

■ The first subclass consists of female plaintiffs claiming a violation of their right to privacy as a result of the presence of male staff in the showers and the stripping of female plaintiffs with the participation of male staff members. Defendants argue that any claims regarding the Female Secured Unit ("FSU") are moot because the unit was closed on May 1, 2000, there are no plans to reopen the FSU, and there are currently no females remaining at Plankinton. Although there may be no current plans to reopen the FSU, it not clear that the closure is permanent. Indeed, the Defendants admit that the cells in the FSU are still being used as necessary. Therefore, if the female Plaintiffs' claims have merit, the rights of any females placed at Plankinton in the future will be affected. At this time these claims are not moot.

This subclass meets the requirements of 23(a).[4] Although there are currently no females at Plankinton the numerosity requirement is still met because the class includes any female juveniles to be placed at Plankinton in the future. As noted, "[j]oinder of

unknown persons is impracticable." *See Atkins*, 595 F.Supp. at 105. Rule 23(a)(2) is met because there is a common question between the members of this subclass, namely: whether the conditions, policies and practices named above which affect the female juveniles in particular at Plankinton, amount to a violation of these female Plaintiffs' constitutional right to privacy. In addition, Rule 23(a)(3) is met because the claims of the female Plaintiffs are typical of the claims of the other female members of the class. According to the Defendants, two of the female Plaintiffs, Shannon D. and Patricia B., both testified to being stripped in the presence of male staff. The factual variations in the Plaintiffs' experiences do not preclude a finding of typicality. All female Plaintiffs were potentially subject to the conditions and practices objected to, and as their overriding claim of constitutional deprivation is the same, there claims are based on the same legal theory.

### 2. Subclasses of Plaintiffs Requiring Mental Health Care and Plaintiffs Requiring Special Education.

■ The other two subclasses will be discussed together. One class involves plaintiffs suffering from mental illness who require mental health care. The other class involves plaintiffs in need of special education. Defendants acknowledge that these claims would be proper for class certification but argue that these subclasses do not meet the numerosity requirement. Defendants claim that there are 35 juveniles receiving psychiatric care and 24 juveniles in individual education plans. Defendants forget, however, that the class includes all those juveniles placed at Plankinton in the future who may be in need of mental health care or special

**3.** The Court considered creating a fourth subclass of male Plaintiffs because the Complaint claims that male juveniles are subject to additional and extended incarceration because the arbitrary disciplinary system allowed male juveniles to be routinely transferred from the Training School back to the Prison, and therefore, such juveniles had difficulty completing the program at Plankinton. (Compl.¶ 45.) However, the Complaint also claims that females were also transferred back to the Female Secured Unit as a result of these allegedly arbitrary disciplinary procedures. (Compl.¶ 35.) Since it is not clear

that only the male juveniles may have been subject to a longer incarceration period as a result of these alleged practices, a subclass will not be created at this time. Should the evidence show that only male juveniles were injured by this alleged practice, however, a subclass will be created at that time.

**4.** Only the first three requirements under Rule 23(a) will be examined here. The fourth requirement of fair and adequate representation is dealt with in the following section.

education. Again, the Court notes that the anonymity of these Plaintiffs makes joinder impracticable. As a result, the numerosity requirement is met.

### D. *Fair and Adequate Representatives.*

The fourth requirement of Rule 23(a) states that the representative parties must "fairly and adequately protect the interests of the class." The Eighth Circuit has found that the focus of this requirement is whether: "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *See Paxton,* 688 F.2d at 562–63. The Plaintiffs are all seeking the same injunctive relief. There are no individual claims. Their interests are only common and the Court does not foresee any real possibility of conflicts between the named Plaintiffs and the other members of the class.

Defendants claim, however, that the Plaintiffs are not adequate representatives for several reasons. First, that four of the named Plaintiffs have been transferred out of Plankinton and therefore, are not proper representatives. Second, that two of the named Plaintiffs are 18 years of age and are no longer under the jurisdiction of the Department of Corrections ("DOC"). Third, that the Plaintiffs do not understand their roles as Plaintiffs in this case.

■ The fact that four Plaintiffs, Patricia B., Christina A., Philip C. and Carl F., have been transferred does not make them inadequate representatives. "When the claim on the merits is 'capable of repetition, yet evading review,' the named plaintiff may litigate the class certification issue despite loss of his personal stake in the outcome of the litigation." *See United States Parole Commission v. Geraghty,* 445 U.S. 388, 398, 100 S.Ct.

1202, 63 L.Ed.2d 479 (1980). The "capable of repetition, yet evading review" doctrine is applied "where the named plaintiff does have a personal stake at the outset of the lawsuit, and where the claim may arise again with respect to that plaintiff." *Id.* Defendants have the power under South Dakota law 26–11A–9 to transfer juveniles between different facilities. S.D.C.L. 26–11A–9 (1999). Even if these four Plaintiffs lost their personal stake as a result of their transfer, under S.D.C.L. 26–11A–9, just as these four Plaintiffs were transferred out of Plankinton, they could be transferred back to Plankinton and become subject once again to the conditions, policies and practices they now object to. "Since a litigant faces some likelihood of becoming involved in the same controversy in the future, vigorous advocacy can be expected to continue." *See Geraghty,* 445 U.S. at 398, 100 S.Ct. 1202. Therefore, even if the four named Plaintiffs that have been removed from Plankinton have lost their personal stake, they may still be representatives of the class.[5]

■ Defendants' second argument, that two Plaintiffs that have reached the age of 18, Philip C. and Patricia B., are no longer proper class representatives, must fail for similar reasons. Under South Dakota law, a juvenile may remain within the jurisdiction of the DOC until 21 years of age. S.D.C.L. 26–11A–5 (1999). The DOC retains jurisdiction over juveniles under the age of 21 until the juvenile is "discharged." S.D.C.L. 26–11A–7 (1999). According to the Defendants, only Patricia B. was discharged from the custody of the DOC. Philip C. who recently turned 18, and Carl F., who is not yet 18, may be discharged, but have not been. Presumably, then, since Philip C. and Carl F. are still under the DOC's jurisdiction, they might be transferred back to Plankinton under S.D.C.L. 26–11A–9.[6]

---

5. If being transferred from a facility were enough to prevent a plaintiff from representing a class, defendants would only need to transfer all of the named Plaintiffs out of the facility in question to defeat an action. It would be impossible then for any of the conditions at Plankinton, or any DOC facility, to be reviewed. As a result, claims such as the ones present here, then, would be "capable of repetition, yet evading review."

6. Carl F. is currently in another facility, Springfield Academy. Phillip C. is not currently in any facility, but as he has not been discharged the Court presumes that the DOC still has jurisdiction over him. Further, it is not clear whether Phillip C. is subject to aftercare supervision. If he is, however, he may be placed in a DOC facility if he violates the conditions of the aftercare supervision. S.D.C.L. 26–11A–16.

Patricia B. presents more of a question since she has been discharged. However, the Court finds that Patricia B. remains a fair and adequate representative of the class. The Supreme Court has found that, "[s]ome claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *See Geraghty*, 445 U.S. at 399, 100 S.Ct. 1202. This is such a case. According to Defendants, Patricia B. became 18 on May 13, 2000 and was discharged a few days later on May 31, 2000. The parties have not claimed that Patricia B.'s discharge was automatically required. Under South Dakota law 26–11A–20, however, the DOC has discretion to discharge a juvenile at any time as a "reward for good conduct upon satisfactory evidence of reformation." The DOC's ability to discharge juveniles at their discretion makes each juvenile's time in the system different and unpredictable. Therefore, it is not clear that any named Plaintiff would remain under the DOC's jurisdiction long enough to certify the class.

In *Gerstein v. Pugh*, the Supreme Court found that class certification was proper even though the named Plaintiffs were no longer in the pre-trial detention facility at issue. *See* 420 U.S. 103, 110–11 n. 11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). The Court noted that the length of pre-trial custody could not be ascertained but "the constant existence of a class of persons suffering the deprivation is certain." *Id.* at 111 n. 11, 95 S.Ct. 854. The same is true here. Plankinton is still a functioning facility serving a continually changing group of juveniles. If the Plaintiffs' claims have merit, the juveniles at Plankinton now and those that will be there in the future are the "constant class" that may be suffering constitutional violations. The fact that a particular named Plaintiff may not be at Plankinton long enough to certify a class will not defeat class certification.[7]

■ Defendants' third claim is that the named Plaintiffs are not familiar with their responsibilities as named Plaintiffs. According to the parties' briefs, the depositions show that the named Plaintiffs are not sure of their roles as plaintiffs but that they did speak with counsel prior to the filing of the complaint. It also appears that at least two of the named Plaintiffs indicated that their goals and interests in this litigation were consistent with the purpose of the complaint. It is also important to remember that these Plaintiffs are juveniles and some have disabilities. Every possible named plaintiff would face the challenge of youth and the possibility of a disability. They are, however, the only ones who might bring a claim in this case. The Court also considers that these Plaintiffs have proceeded through Next Friends. Defendants have not challenged the ability of these Next Friends to help the named Plaintiffs serve as fair and adequate representatives. Therefore, this Court finds the named Plaintiffs are adequate and fair representatives.

Finally, counsel for the named Plaintiffs have demonstrated that they are qualified and competent. Therefore, the requirements of Rule 23(a) are met.

### E. *Maintenance of a Class Action.*

■ The Plaintiffs class action is maintainable, as they claim, under Rule 23(b)(2). Rule 23(b)(2) states:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Rule 23(b)(2) " 'must be read liberally in the context of civil rights suits.' " *See Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir.1980). In *Coley*, the Eighth Circuit found that a class action was properly maintained under 23(b)(2) where plaintiffs claimed discriminatory conditions of confinement and the relief

─────────────

7. In addition, Patricia B. remains a proper class representative because it was the Defendants' own request for a delay on the issue of certification so that continued discovery of the Plaintiffs

might be taken which brought this Court's decision on certification beyond the date of Patricia B.'s 18th birthday.

sought was to have certain conditions declared unconstitutional. *Id.* Similarly, the named Plaintiffs here claim that the conditions of confinement at Plankinton and the facility's policies and practices amount to unconstitutional deprivations of the Plaintiffs rights under the First and Fourteenth Amendments and of deprivations of the Plaintiffs rights under IDEA. The relief they seek is to enjoin Plankinton from continuing to operate under these conditions. This relief would benefit the class as a whole.

Defendants claim that class certification is not necessary under 23(b)(2) but admit that some courts have determined that class certification may be necessary to insure the application and compliance of the injunctive relief. While this Court does not doubt the good faith of the Defendants, the class certification will insure that any injunctive relief, if ordered, will apply not just to the named Plaintiffs but to all those subject to any conditions found to be unconstitutional. If Rule 23(b)(2) plainly applies and there is no prejudice to the Defendants the class should be certified so that any injunctive relief awarded to the plaintiff is made "explicit and unmistakable." *See Rodriguez v. Percell,* 391 F.Supp. 38, 41 n. 2 (S.D.N.Y.1975). The Court has found Rule 23(b)(2) to apply and finds no prejudice to Defendants in granting class certification. Thus, Plaintiffs have demonstrated that this class action is maintainable under Rule 23(b)(2).

Plaintiffs have satisfied the requirements of Rule 23 in seeking to certify a class in this action. Accordingly,

IT IS ORDERED:

1. That Plaintiffs' motion for class certification is GRANTED;

2. That a general class of all juveniles who are now or in the future will be confined at Plankinton is certified with regard to the Plaintiffs' claims of violations of their due process rights under the Fourteenth Amendment and the violation of the Plaintiffs' right to privacy under the First Amendment as a result of the following conduct: four-pointing (Compl.¶ 30), bumpering (Compl.¶ 32), excessive force during cell extraction (Compl.¶ 33), isolation for arbitrary reasons (Compl.¶¶ 36–38), the conditions in the crisis cells (Compl.¶¶ 37–38), the table program (Compl.¶ 44), the inadequate training and supervision of the staff (Compl.¶¶ 49–50), the alleged lack of procedure involved in the disciplinary decisions (Compl.¶¶ 39–43), Plaintiffs' difficulty in successfully completing the program at Plankinton due to the arbitrary disciplinary system (Compl.¶¶ 35, 45), the monitoring of calls and visits with family and the reading and censoring of Plaintiffs' mail (Compl.¶¶ 51–53) and the inadequate provision of education generally (Compl.¶ 61);

3. That a subclass of all female juveniles who are now or in the future will be confined at Plankinton is certified with regard to the claims of violation of their right to privacy under the First Amendment as a result of the stripping of female juveniles in the presence of male staff (Compl.¶ 31) and the presence of male staff in the shower area (Compl.¶ 47);

4. That a subclass of all juveniles who are now or in the future will be confined at Plankinton and are in need of mental health care is certified with regard to claims of the deprivation of due process as a result of inadequate mental health care (Compl.¶¶ 54–60), the effect of isolation on such plaintiffs and the application of disciplinary procedures to such plaintiffs (Compl.¶ 46); and

5. That a subclass of all juveniles who are now or in the future will be confined at Plankinton and are in need of special education is certified with regard to claims that such plaintiffs are denied their rights under IDEA as a result of the inadequate provision of special education programs (Compl.¶¶ 62–67).