**Monroe EVANS, and Joan Yates Evans, Plaintiffs,**

**v.**

**AMERICAN CREDIT SYSTEMS, INC., Elias Robert Ruiz, and Cathy Schneeberger, Defendants.**

No. 8:02 CV 472.

United States District Court, D. Nebraska.

June 10, 2004.

Pamela A. Car, Omaha, NE, O. Randolph Bragg, Horwitz, Horwitz & Associates, Ltd., Chicago, IL, for plaintiffs.

Cheryl L. Mullin, Dallas, TX, for defendants.

## ORDER

BATAILLON, District Judge.

This matter is before the Court on defendant American Credit Systems, Inc.'s objection, Filing No. 201, to the certification of the class and subclasses as set forth in the May 19, 2004, report and recommendation of the magistrate. Filing No. 196. Defendant objects arguing that the time periods for the classes are not sufficiently definite and further argues that the plaintiffs in subclass (d) are not representative of the class. I have carefully reviewed the record, and specifically the report and recommendation of the magistrate, as well as the brief and objections submitted by the defendant and relevant case law. I conclude that the magistrate is correct in his findings and conclusions.

THEREFORE, IT IS ORDERED THAT:

1. The magistrate's report and recommendation, Filing No. 196, is adopted in its entirety; and

2. The objections to the report and recommendation, Filing No. 201, are overruled.

## REPORT and RECOMMENDATION

THALKEN, United States Magistrate Judge.

This matter is before the court on the plaintiffs' motion for class certification (Filing No. 58). The plaintiffs seek to certify a class of: (i) all persons with addresses in the State of Nebraska (ii) to whom letters in the form of Exhibits B, C, D and/or E (attached to the complaint) (iii) were sent by any of the defendants (iv) in an attempt to collect a debt (v) which, according to the nature of the creditor or the debt, or the records of the creditor or defendants, was incurred for personal, family, or household purposes (vi) which letters were not returned undelivered by the U.S. Post Office. Further, the plaintiffs seek to divide the class into subclasses for each of the four form letters and a subclass for those from whom interest or other charges were illegally collected. For the reasons set forth below, the undersigned magistrate judge will recommend the plaintiffs' motion for class certification be granted.

On January 15, 2004, the court held a hearing on the plaintiffs' motion. At the hearing, Randolph Bragg and Pamela Carr represented the plaintiffs and Cheryl Mullin represented the defendant American Credit Systems, Inc. (ACS). Ms. Mullin's motion to withdraw as counsel for the individual defendants, Cathy Schneeberger and Elias Robert Ruiz, was granted. The individual defendants were allowed until January 30, 2004, to submit any additional evidence or briefing. A transcript of the hearing was filed on February 5, 2004(TR.). See Filing No. 177.

The plaintiffs filed a brief (Filing No. 59), an index of evidence (Filing No. 60) a reply brief (Filing No. 111) and an amended index of evidence (Filing No. 112) in support of their motion. During the hearing the plaintiffs submitted a supplemental index of evidence, which was received without objection (Exhibit 1). The defendants filed a brief (Filing No. 88) an index of evidence (Filing No. 89) and a supplemental brief (Filing No. 167 attachment) in opposition to the motion

to certify a class. The defendants presented no additional evidence during or after the hearing.

## INTRODUCTION

The plaintiffs bring their class action lawsuit on behalf of themselves and all other Nebraska consumers to challenge certain collection practices used by the defendants, ACS d/b/a Legal Administrative Services and d/b/a National Audit Services, ACS's employee Cathy Schneeberger [1] a/k/a Liz Baxter, and ACS's employee Elias Robert Ruiz a/k/a Alan Roberts. This case principally concerns several claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692a *et seq.*

The defendants were attempting to collect debt the named plaintiffs allegedly owed Montessori Educational Centers, Inc. (Montessori). The plaintiffs challenge the practice of ACS attempting to collect unauthorized charges, including "collection charges," interest, and attorney fees, where the underlying agreement does not expressly provide for such charges and where, according to the plaintiffs, such charges are not permitted by law. Additionally, the plaintiffs challenge the contents of certain language contained in a series of standard collection letters sent by the defendants to the plaintiffs, designated as Exhibits B, C, D and E. In these collection letters, ACS does not use its corporate name; the letters are signed by a person who claims to be part of the "litigation department"; and the letters threaten litigation. The plaintiffs claim these and other actions violate the FDCPA. Additionally, the plaintiffs allege the defendants' actions violate the Nebraska Consumer Protection Act (NCPA), Neb.Rev. Stat. §§ 59–1.601 *et seq.* and the Nebraska Deceptive Trade Practices Act (NDTPA), Neb.Rev.Stat. §§ 87–306 *et seq.*

## FACTUAL BACKGROUND

For purposes of the motion for class certification, the court will rely on those facts relied on by the district court in ruling on summary judgment issues and additional

---

1. After the hearing on the motion for class certification, counsel for the parties notified the court they have reached a settlement agreement with

regard to the defendant Cathy Schneeberger. See Filing No. 188.

facts elicited at the class certification hearing.

1. ACS is a corporation with its principal office in California. ACS does business as Legal Administrative Services and as National Audit Services.

2. Cathy Schneenberger a/k/a Liz Baxter is or was an employee of ACS.

3. Scheenberger is not an attorney at law.

4. Elias Robert Ruiz a/k/a Alan Roberts is or was an employee of ACS.

5. ACS regularly attempts to collect debts alleged to be due another using the names Legal Administrative Services and National Audit Services.

6. On January 16, 2002, Schneenberger telephoned the plaintiff Monroe Evans. On January 22, 2002, ACS sent Exhibit A to the plaintiffs Monroe Evans and Joan Yates Evans and stated in handwriting: "Please send payment within 10 days to add. listed above to prevent further litigation." Exhibit A was signed by Liz Baxter.

7. Exhibit B was sent or prepared by ACS on March 22, 2002 to the plaintiffs. Exhibit B was initialed "L.B." and contained the typewritten name "Liz Baxter, Litigation Department." Exhibit B contained the statements: "If you fail to respond, I will without necessity, process this matter for proceedings for the full amount due plus interest, attorney fees, court costs.... Since Legal Administrative Services is an assignee for collection, it is prohibited from pursuing this case in Small Claims Court, as such you will be liable for costs, interest and attorney fees, (if applicable), in the event Legal Administrative Services has to litigate this matter within the Limited Civil of the Superior Court. This will be the last letter you receive from us."

8. Exhibit C was sent or prepared by ACS to the plaintiffs on April 19, 2002. Exhibit C contained the typewritten name "Liz Baxter, Litigation Department." Exhibit C was nearly identical to Exhibit B.

9. Exhibit D was sent or prepared by Defendant ACS to the plaintiffs on May 7, 2002. Exhibit D contained the typewritten name "Liz Baxter, Legal Administrative Services." Exhibit D states in part: "Account is being processed for further proceedings which can only be stopped by directly contacting the undersigned."

10. The State of Nebraska does not contain a "Limited Civil of the Superior Court."

11. Exhibit E was sent to the plaintiffs on January 10, 2003. Exhibit E lists the principal balance as $1410.00, collection fee as $276.00, and balance due as $1686.86. Exhibit E states: "We are verifying select accounts receivable for the creditor listed above. Our client records show that your outstanding account balance in the amount of $1,686.86 remains unpaid. If the balance is just and correct please send payment to Montessori Education Centers.... If you dispute this balance, please contact me at 909–694–9394 to discuss the nature of the dispute. Failure to respond within 10 days could result in our client's consideration to take further action." Exhibit E contains the signature block of Alan Roberts, Audit Supervisor, National Audit Service.

12. The plaintiffs did not sign any written agreement authorizing Montessori to charge a collection fee.

13. The plaintiffs did not sign a written agreement authorizing the collection of any charges, including interest and attorney fees, incidental to the underlying debt.

14. ACS routinely assesses a charge of 10% on all accounts which it collects against residents of Nebraska regardless of whether the underlying agreement between the resident and the original creditor expressly authorizes such a charge.

15. The defendants admit that for the four-year period preceding October 8, 2002, the defendants sent 1250 form letters B and C; 2750 form letters D; and 8600 form letters E. See Filing No. 89, ¶¶ 2–4 (Kieffer Declaration).

16. The defendants admit at least four hundred letters in the form of letters B and C; 1750 in the form of letter D and 3500 in the form of letter E were sent to Nebraska residents in the one-year period preceding

October 8, 2002. See Filing No. 89, ¶¶ 2–4 (Kieffer Declaration).

## PROCEDURAL BACKGROUND

On March 25, 2004, the district court ruled on several motions for summary judgment. The defendants had moved for partial summary judgment as to Exhibit E (Filing No. 116) and the issues of interest and other "collection charges" (Filing No. 122). The court denied the motions. The defendants also moved for partial summary judgment on the plaintiffs claims under the NDPTA and the NCPA (Filing No. 119). The court denied the motion as it related to the NCPA and granted the motion with regard to the plaintiffs' claims under the NDPTA.

The court granted the plaintiffs' motion for summary judgment with respect to their claims brought pursuant to 15 U.S.C. §§ 1692e(3) and 1692e(14) for each of the form letters A, B, C and D. These subsections of the FDCPA prohibit debt collectors from falsely misrepresenting or implying that any individual is an attorney or that any communication is from an attorney (§ 1692e(3)) and "the use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization" (§ 1692e(14)). The plaintiffs' other claims under FDCPA remain at issue due to disputed genuine issues of material fact. Specifically, the plaintiffs' allege violations such as threatening a lawsuit in an improper jurisdiction (15 U.S.C. § 1692e(2)(A)); failure to provide a "validation notice" (15 U.S.C. § 1692g(a)); threatening legal action (15 U.S.C. § 1692e(5)), when such action cannot legally be taken or is not intended to be taken; and improperly adding amounts in addition to the principal debt (15 U.S.C. § 1692f(1)).

A motion for summary judgment on behalf of Mr. Ruiz remains outstanding.

## LEGAL STANDARD

Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

See Fed.R.Civ.P. 23(a). The United States Supreme Court has summarized the four basic requirements as these: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The determination under Rule 23(a) "is not perfunctory: '[A] class action may properly be certified only if the trial court is satisfied, after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Nudell v. Burlington N. & Santa Fe Ry. Co.,* 2002 WL 1543725, at *3 (D.N.D. July 11, 2002) (quoting *Bishop v. Comm. on Prof'l Ethics and Conduct of Iowa State Bar Ass'n,* 686 F.2d 1278, 1287 (8th Cir.1982)).

"In addition to satisfying all the requirements of subsection (a), the plaintiff must also demonstrate that class certification is appropriate under either Rule 23(b)(1), (2) or (3)." *Schneider v. United States,* 197 F.R.D. 397, 400 (D.Neb.2000). Rule 23(b) allows a class action to be maintained when (1) the prosecution of individual actions would create the risk of either (a) inconsistent adjudications or (b) adjudications for the actions of some members that, as a practical matter, dispose of or impair the ability of others to protect their own interests; (2) the party opposing the class has acted on generally the same or similar grounds with regard to the whole class, making relief appropriate to all members of the class; or (3) the court finds the questions of law or fact common to members of the class predominate over other questions affecting individual members, and the class action is superior to other methods for fair and efficient adjudication of the matter. See Fed.R.Civ.P. 23(b).

■ "In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v.*

*Watt,* 40 F.3d 255, 258–59 (8th Cir.1994) (citing *Smith v. Merch. & Farmers Bank of W. Helena,* 574 F.2d 982, 983 (8th Cir.1978)). "In addition, all four requirements of Rule 23(a) must be met with respect to each subclass in the class action." *Roby v. St. Louis S.W. Ry. Co.,* 775 F.2d 959, 961 (8th Cir.1985) (citing *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 559 (8th Cir.1982)); *Lang v. Kansas City Power & Light Co.,* 199 F.R.D. 640, 644 (W.D.Mo.2001); *Caroline C. By and Through Carter v. Johnson,* 174 F.R.D. 452, 462 (D.Neb.1996) (hereafter *"Caroline C."*); see also In re *Select Comfort Corp. Sec. Litig.,* 202 F.R.D. 598, 604–06 (D.Minn.2001) (analyzing individual subclasses under Rule 23); *Christina A. ex rel. Jennifer A. v. Bloomberg,* 197 F.R.D. 664, 669 (D.S.D.2000) (analyzing individual subclasses under Rule 23). The court will review, *seriatim,* the requirements the plaintiffs must satisfy with regard to the class and with regard to each of the proposed subclasses.

## ANALYSIS

### A. Rule 23(a) Requirements

#### 1. Numerosity

The first prerequisite the plaintiffs must meet under Rule 23(a) is numerosity. *Amchem,* 521 U.S. at 613, 117 S.Ct. 2231. Rule 23(a) requires "the class be so numerous that joinder of all members is impracticable." See Fed.R.Civ.P. 23(a)(1). "Plaintiffs need not show that joinder is impossible, but that joining all members of the class would be difficult." *Caroline C.,* 174 F.R.D. at 462 (citations omitted). Furthermore, the *Caroline C.* court noted:

> Certainly, where the class is very large—for example numbering in the hundreds—joinder will be impracticable .... In light or prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.

Newberg, Newberg on Class Actions § 3.05, at 3–25; see also *Robidoux [v. Celani],* 987 F.2d [931], at 936 [(2d Cir.1993)];

*Lockwood [Motors, Inc. v. General Motors Corp.],* 162 F.R.D. [569] at 574 [(D.Minn. 1995)], 3B Moore's Federal Practice § 23.05[1], at 23–143–45 (2d ed.1995) ("while there are exceptions, numbers in excess of forty, particularly numbers in excess of one hundred ... have sustained the [numerosity] requirement").

*Caroline C.,* 174 F.R.D. at 462. Additionally, "[t]he Eighth Circuit has not established strict requirements regarding the size of a proposed class[.]" *Estate of Mahoney v. R.J. Reynolds Tobacco Co.,* 204 F.R.D. 150, 153 (S.D.Iowa 2001) (citing *Emanuel v. Marsh,* 828 F.2d 438, 444 (8th Cir.1987); *Boyd v. Ozark Air Lines, Inc.,* 568 F.2d 50, 54 (8th Cir.1977)).

In the instant case, the plaintiffs have presented evidence the class numbers several hundred for each of the challenged collection letters. The defendants do not dispute numerosity exists. Based upon the evidence presented, the undersigned magistrate judge finds the numerosity requirement has been satisfied as to the class as a whole and as to the individual proposed subclasses.

#### 2. Commonality

Second, the plaintiffs must prove the element of commonality. *Amchem,* 521 U.S. at 613, 117 S.Ct. 2231. Rule 23(a)(2) requires there be "questions of law or fact common to the class." See Fed.R.Civ.P. 23(a)(2). "Rule 23 is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.' " *De-Boer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1174 (8th Cir.1995) (quoting *Paxton,* 688 F.2d at 561). "However, '[t]he rule does not require that every question of law or fact be common to every member of the class ....' " *Caroline C.,* 174 F.R.D. at 464 (quoting *Paxton,* 688 F.2d at 561). Further, commonality may be shown "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Paxton,* 688 F.2d at 561 (citation omitted). One district court has stated that "the commonality requirement imposes a very light burden on the Plaintiff seeking to certify a class and is easily satisfied." In re

*Hartford Sales Practices Litig.,* 192 F.R.D. 592, 603 (D.Minn.1999).

The parties argued the issues of commonality and typicality together, therefore the court will discuss them together as well. The plaintiffs have the burden to show typicality of their claims in relation to the other putative members of the class. *Amchem,* 521 U.S. at 613, 117 S.Ct. 2231. Rule 23(a) requires the class representatives, the named plaintiffs in this case, have claims or defenses which "are typical of the claims or defenses of the class." See Fed.R.Civ.P. 23(a)(3). Typicality means there are "other members of the class who have the same or similar grievances as the plaintiff." *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 830 (8th Cir. 1977). Typicality is satisfied where the named plaintiffs' claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984). The burden to establish typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer,* 64 F.3d at 1174. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. Utili-Corp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir.1996) (citing *Donaldson,* 554 F.2d at 831).

The plaintiffs contend each class member, by definition, will have received a letter in the form of B, C, D and/or E. Each of these form letters, as they were sent to Nebraska residents, were identical except for the consumer-specific or identifying information. See Filing No. 60, Exhibit 6 (Attachment A–Kieffer Deposition 174:25–175:4). Additionally, ACS's company policy was to charge debtors an automatic 10%, regardless of whether such amount was permitted in the underlying creditor agreement. *Id.* 132:1–16.

The defendants argue the plaintiffs' claims are not common of the class because each of the separate claims (then ten) apply only to a small percentage of the total class. However, it is undisputed several hundred of each

letter were sent and each letter is subject to one or more of the claims.

The defendants argue the plaintiffs do not meet the commonality or typicality requirement with regard to the claims concerning letter E because the plaintiffs are subject to a unique defense, that the defendants' mistakenly sent the letter. See Filing No. 89, ¶¶ 7–8 (Kieffer Declaration). It is true "a proposed class representative is not typical if the proposed representative is subject to a unique defense that threatens to play a major role in the litigation." See *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 179–80 (2d Cir. 1990); see also *King v. Arrow Fin. Servs., LLC.,* 2003 WL 21780973, *4 (E.D.Pa. July 31, 2003) (bona fide error or mistake insofar as the letter should not have been sent). The district court denied the defendants' motion for summary judgment as to letter E and the court will not now determine the merits of the defense. Additionally, while the defense may be dispositive as to the named plaintiffs' claims regarding letter E, the defense is not such that it will overwhelm the litigation or become the plaintiffs' main focus. See *Hanon,* 976 F.2d at 508 (citing cases).

The principle legal issues are whether the form language contained in each of the letters B, C, D and E violate the FDCPA. The plaintiffs have shown the potential class members received the form letters subject to the defendants' pattern and practices of dispatching the form letters. See *Swanson v. Mid Am, Inc.,* 186 F.R.D. 665, 668 (M.D.Fla. 1999) ("To establish commonality, it is sufficient that Plaintiff allege that all class members received the same collection letter."). Accordingly, the undersigned finds the plaintiffs have met their burden of showing commonality and typicality of claims as to the whole class and each subclass in this case.

### 3. Adequacy of Representation

The fourth prerequisite the plaintiffs must meet under Rule 23(a) for class certification is adequacy of representation. *Am-*

*chem,* 521 U.S. at 613, 117 S.Ct. 2231. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." See Fed.R.Civ. P.23(a)(4). "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton,* 688 F.2d at 562 (citing *Gonzales v. Cassidy,* 474 F.2d 67, 72 (5th Cir.1973)).

■ In the instant case, the plaintiffs have alleged the named plaintiffs understand their responsibilities as representatives of the class and have an understanding of the nature of the litigation, the purpose of the suit and the remedies. See Filing No. 59, p. 12 & affidavits of the plaintiffs. The defendants argue the plaintiffs must be confused about the litigation because in their affidavits they stated they had received the form letters A, B, C and D, without mentioning E. The plaintiffs later amended their affidavits and stated the omission of form letter E was a typographical error. The court does not find the typographical error impairs the plaintiffs' ability to represent the proposed class. The defendants do not challenge the adequacy of counsel to represent the plaintiffs. Thus, the undersigned finds the class representatives and their counsel meet the adequacy of representation element under Rule 23(a)(4).

## B. Rule 23(b) Requirements

### 1. Subclasses

While the court finds the plaintiffs have satisfied the requirements of Rule 23(a) with regard to the putative class and subclasses, the court must still inquire whether this action can be maintained under any of the subdivisions of Rule 23(b). *Paxton,* 688 F.2d at 563. The plaintiffs seek certification pursuant to Rule 23(b)(3) or, alternatively, pursuant to Rule 23(b)(2) or as a hybrid of the two.

### a. Rule 23(b)(3)

Under Rule 23(b)(3), the court must find "that the questions of law or fact common to the members of the class predominate over

any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." See Fed.R.Civ.P. 23(b)(3). One court in this circuit has ruled "[t]he requirements of 'predominance' and 'superiority' are stated in Rule 23(b)(3) in the conjunctive; both must be present for an action to be maintained under that provision." *Bryant v. Bonded Account Serv./Check Recovery,* 208 F.R.D. 251, 261 (D.Minn.2000).

As to the first prong of the inquiry, the Supreme Court has ruled the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623, 117 S.Ct. 2231 (citing 7A Wright, et al., *supra,* § 1777, at 518–519 n.19). "In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir.1986). "Where there is an essential factual link between all class members and the defendants, for which the law provides a remedy, questions of law or fact common to the class exist." *D'Alauro v. GC Servs. Ltd. Partnership,* 168 F.R.D. 451, 458 (E.D.N.Y.1996) (citing *Halverson v. Convenient Food Mart, Inc.,* 69 F.R.D. 331, 334 (N.D.Ill.1974)). Furthermore, "when one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." 7A Wright, et al., *supra,* § 1778.

■ As discussed above with respect to the other elements the plaintiffs must meet under Rule 23, the undersigned finds the issues of whether the text of each of the letters violate the FDCPA constitutes the most significant part of the named plaintiffs' cases. The plaintiffs have shown an essential link among all putative class members-the receipt of certain letters which violate the FDCPA. Thus, the undersigned finds the common issues of whether each of the letters violate the FDCPA predominates over the individual claims for monetary relief or par-

ticular defenses against the individual plaintiffs.

For the second prong of the Rule 23(b)(3) inquiry, the class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." See Fed.R.Civ.P. 23(b)(3). One district court has ruled: "As to the second prong of the inquiry, Rule 23(b)(3) requires that 'a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy....' Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Estate of Mahoney*, 204 F.R.D. at 161 (citing *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996); Fed.R.Civ.P. 23(b)(3)).

The undersigned finds resolution of the plaintiffs' claims, at least as to the liability of the defendants to each individual plaintiff, through a class action rather than through hundreds of individual suits seeking restitution of claims for each of the letters, is the superior approach for the class and each of the subclasses. See *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 626 (E.D.Pa. 1994) (noting "[g]iven the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action"). There is little difficulty in finding the class action is the preferable method of determining the claims the plaintiffs seek to litigate. The alternative to class action in this case would be a succession of lawsuits by a considerable number of individual plaintiffs, which the undersigned magistrate judge believes would be an inefficient allocation of judicial resources. While it may become necessary to decertify or bifurcate issues within the subclasses for determinations of the individual monetary award owed each plaintiff, the court finds the class action vehicle to be superior to any other means of determining the defendants' liability to the plaintiffs, if any. Based upon the foregoing, the undersigned finds the subclasses for each of the letters B & C together, letter D alone, letter E alone, and a subclass for those persons against whom interest or other illegal charges were collected may be certified under Rule 23(b)(3). However, as noted previously, when subsection (b)(2) applies, subsection (b)(3) "should not be used." See *DeBoer*, 64 F.3d at 1175.

### b. Rule 23(b)(2)

To qualify for certification under Rule 23(b)(2), the class must show "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]" See Fed.R.Civ.P. 23(b)(2). The Eighth Circuit has cited with approval the statement contained in the treatise Federal Practice and Procedure that "[i]f the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2)." *DeBoer*, 64 F.3d at 1175 (quoting 7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1772 (2d ed.1986)). "When [subsection] (b)(2) is applicable, however, (b)(3) should not be used, so as to avoid unnecessary inconsistencies and compromises in future litigation." *Id.* (citing *Reynolds v. Nat'l Football League*, 584 F.2d 280, 284 (8th Cir.1978)). Finally, under Rule 23(b)(2), "class members are not entitled to notice of the action and are not entitled to 'opt out' of the action if they so choose, as they would be under a Rule 23(b)(3) certification." *Sperry Rand Corp. v. Larson*, 554 F.2d 868, 875 (8th Cir.1977). "However, a district court may require notice and the right to opt-out under its discretionary authority provided in Rule 23(d)(2)." *Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir.2003); see also *Eubanks v. Billington*, 110 F.3d 87, 96 (D.C.Cir.1997); *Doe v. Bridgeport Police Dept.*, 198 F.R.D. 325, 333–34 n. 6 (D.Conn. 2001); *In re Cincinnati Radiation Litig.*, 187 F.R.D. 549, 555 (S.D.Ohio 1999).

▮ The plaintiffs allege the declaratory relief sought is to find the defendants' use of form letters B, C, D and E to be illegal, thus equitable relief is appropriate to the class as a whole. Further, the plaintiffs seek an in-

junction barring the defendants from sending form letters B, C, D and E to other Nebraska residents. The defendants do not dispute that the plaintiffs seeks such relief. Therefore, because the plaintiffs seek declaratory and injunctive relief as to the subclasses, the undersigned finds those subclasses should be certified under Rule 23(b)(2).

### c. Notice

"[N]otice to the plaintiff class is not required under Rule 23(b)(2)." *Caroline C.,* 174 F.R.D. at 467 n. 18 (citing *Sperry Rand Corp. v. Larson,* 554 F.2d 868, 875 (8th Cir. 1977)). However, such notice is required when the class is certified pursuant to Rule 23(b)(3). *Sperry Rand Corp.,* 554 F.2d at 875. Though the undersigned finds certification is proper under Rule 23(b)(2) at this time, later in the proceedings it may become necessary to provide notice and an opportunity to opt out for class members within the subclasses with regard to the monetary relief available to them. See 2 Conte & Newberg, *supra* § 4.14, at 97 (noting "the underlying premise of (b)(2) certification, that the class members suffer from a common injury that can be addressed by classwide relief, begins to break down when the class seeks to recover ... monetary damages to be allocated based on individual injuries."). However, this procedure might only become necessary if it is found individualized inquiries must be made as to the amount of the monetary relief to be afforded each member of the subclasses. The court has several options in dealing with actions wherein monetary relief is sought in conjunction with declaratory and injunctive relief. One circuit court of appeals, citing the discretion afforded district courts in dealing with individualized damages issues, noted:

> There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove

damages; (4) creating subclasses; or (5) altering or amending the class. See, e.g., Fed.R.Civ.P. 23(c)(4) (stating that "[w]hen appropriate, (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class").

In re *Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 141 (2d Cir.2001). Another circuit court has noted:

> [T]he language of Rule 23 is sufficiently flexible to afford district courts discretion to grant opt-out rights in (b)(1) and (b)(2) class actions. The rule itself does not expressly preclude opt-outs in non-(b)(3) actions, and the procedural flexibility suggested in subsection (d) is consistent with the view of Professor Moore that within the basic framework of Rule 23, "the supportable range of judicial choice appears quite wide." Moore et al., supra, ¶ 23.40[4], at 23–283. Although, as a general matter, courts should not permit opt-outs when doing so would undermine the policies behind (b)(1) or (b)(2) certification, where both injunctive and monetary relief are sought, the need to protect the rights of individual class members may necessitate procedural protections beyond those ordinarily provided under (b)(1) and (b)(2).

*Eubanks,* 110 F.3d at 94–95. At least one district court in this circuit has also found it appropriate to provide for notice and an opportunity to opt out for class members in an action certified under Rule 23(b)(2). In *Robinson v. Sears, Roebuck and Co.,* 111 F.Supp.2d 1101 (E.D.Ark.2000), the Eastern District of Arkansas considered the propriety of requiring notice as to the damages issue in an employment discrimination case in which the plaintiffs only sought certification under Rule 23(b)(2). *Robinson,* 111 F.Supp.2d at 1127. The court's ruling, however, was based upon its finding that the monetary damages sought were not merely incidental to the injunctive relief sought. *Id.* The court cited cases wherein the Seventh Circuit outlined alternative procedures for handling cases in which the monetary relief was more than incidental to injunctive relief. The court noted three options:

(1) certify the class under Rule 23(b)(3) for all proceedings; (2) certify a Rule 23(b)(2) class for the portion of the case addressing equitable relief and a Rule 23(b)(3) class for the portion of the case addressing damages (divided certification); and (3) certify the class under Rule 23(b)(2) for both monetary and equitable remedies but exercise its plenary authority under Rules 23(d)(2) and 23(d)(5) to provide all class members with personal notice and opportunity to opt out, as though the class was certified under Rule 23(b)(3).

*Id.* (citing *Lemon v. Int'l Union of Operating Eng., Local No. 139, AFL—CIO,* 216 F.3d 577, 581–82 (7th Cir.2000); *Jefferson v. Ingersoll Int'l Inc.,* 195 F.3d 894, 898–99 (7th Cir.1999)). The court found it appropriate to utilize the third option and certify the class under Rule 23(b)(2), but to exercise its plenary authority to provide notice and opportunity to opt out similar to that available with certification under Rule 23(b)(3). *Id.*

As the Second Circuit noted in In re *Visa Check,* "[t]here are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action[.]" In re *Visa Check,* 280 F.3d at 141. Based upon the foregoing, the undersigned finds it would be proper to certify the third subclass under Rule 23(b)(2) at the present time. See *De-Boer,* 64 F.3d at 1175 (providing that when subsection (b)(2) applies, subsection (b)(3) "should not be used"). However, the undersigned notes that, as the instant case progresses, it may become apparent that individualized determinations will need to be made as to the recovery to be afforded each member of the subclasses. In that event, it may become necessary to either bifurcate the issues of liability and the monetary relief requested, or to decertify each subclass after a determination has been made as to the defendants' liability. See *In re Visa Check,* 280 F.3d at 141; 2 Conte & Newberg, *supra* § 4.14. If either bifurcation or decertification become necessary, it may also be necessary to provide notice to individual class members and an opportunity to opt out, either pursuant to Rule 23(b)(3), or to allow each subclass to remain certified under Rule 23(b)(2), but exercise "plenary authority under Rules 23(d)(2) and 23(d)(5) to provide all class members with personal notice and opportunity to opt out, as though the class was certified under Rule 23(b)(3)." *Robinson,* 111 F.Supp.2d at 1127. The notice would inform class members as to the procedure they should follow and how they may proceed to prove the monetary relief to which they are entitled after the liability issue has been decided. Upon consideration,

**IT IS RECOMMENDED TO JUDGE JOSEPH F. BATAILLON that:**

1. The plaintiffs' motion (Filing No. 58) to certify this case as a class action be granted as set forth herein.

2. The class be certified, pursuant to Fed. R.Civ.P. 23(a) and 23(b)(2), under the following definition:

> All persons with addresses in the State of Nebraska to whom letters in the form of Exhibits B, C, D and/or E (attached to the complaint) were sent by any of the defendants in an attempt to collect a debt which, according to the nature of the creditor or the debt, or the records of the creditor or defendants, was incurred for personal, family, or household purposes and which letters were not returned undelivered by the U.S. Post Office.

3. The following four subclasses be created under the class definition recited above, and certified pursuant to Fed.R.Civ.P. 23(a), 23(b), and 23(c)(4):

(a) All class members who received letters in the form of Exhibits B or C.

(b) All class members who received letters in the form of Exhibit D.

(c) All class members who received letters in the form of Exhibit E.

(d) All class members against whom interest and other charges incidental to the underlying obligation were collected which were not expressly provided for by the underlying agreement between the consumer and the original creditor nor allowed by law.

**ADMONITION**

Pursuant to NELR 72.4 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dsted May 19, 2004.